## STATE OF MARYLAND *v.* MARGARET WAGNER

[No. 668, September Term, 1971.]

*Decided June 1, 1972.*

414

The cause was argued before MURPHY, C. J., and MORTON, ORTH, CARTER and GILBERT, JJ.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *John B. Griffith, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*John Henry Lewin, Jr.* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellee Margaret Wagner was charged in the Criminal Court of Baltimore in a ten-count indictment with violating Maryland Code, Article 56, Section 230A—the so-called Maryland "blockbusting" statute—which declares it a misdemeanor:—

> "* * * for any person, firm, corporation or association, *whether or not acting for monetary gain,* knowingly to induce or attempt to induce another person to transfer an interest in real property, or to discourage another person from purchasing real property, by representations regarding the existing or potential proximity of real property owned, used, or occupied by per-

sons of any particular race, color, religion, or national origin, or to represent that such existing or potential proximity will or may result in: 1. The lowering of property values; 2. a change in the racial, religious, or ethnic character of the block, neighborhood or area in which the property is located; 3. an increase in criminal or antisocial behavior in the area; or 4. a decline in quality of the schools serving the area." (Emphasis supplied.)

Specifically, Wagner was charged in the indictment with knowingly inducing, or knowingly attempting to induce, a named individual to transfer an interest in designated real property by making representations proscribed by the statute. In no count of the indictment, however, was it averred that Wagner made the proscribed representations while acting for monetary gain. Wagner moved to dismiss the indictment on the ground that the statute upon which the indictment was predicated violated her federal and state constitutional rights, particularly her First Amendment guarantee of freedom of speech. She claimed that the statute "prohibits private conversations between laymen who stand to gain nothing from a real estate transaction"; that the statute constituted a "blanket restriction of speech, guilty or innocent alike" without regard to profit motive and, therefore, must be held constitutionally defective.

The court (Liss, J.) dismissed the indictment on the ground that it was fatally defective because it omitted an essential averment, *viz.*, it failed to allege that in making the prohibited representations Wagner was acting for monetary gain. In so holding, the court expressly adopted the reasoning contained in the *nisi prius* opinion of the Circuit Court for Baltimore County (Proctor, J.) in the case of *State v. Mason* (Criminal No. 35899), decided July 1, 1969, which involved the same statute and a similar indictment. In that case, Judge Proctor held that so long as the representations prohibited by the statute were made by a person "acting for monetary

gain" the statute did not violate First Amendment rights of freedom of speech and was constitutional, but not otherwise. He concluded that unless an indictment charging a violation of the statute specifically alleged that the representations were made while the accused person was acting for monetary gain, it must be found fatally defective and since the defect was one of substance, and not merely form, the indictment could not be amended.

Appealing from the court's order dismissing the indictment (see Maryland Code, Article 5, Section 14), the State claims that even if the statute is constitutional only to the extent that it proscribes representations made by a person while acting for monetary gain, nevertheless it is not necessary to so allege in the indictment in order properly to charge the statutory offense. The State argues that an indictment charging an offense based on a statute which is constitutional only in part need not specify that it applies only to that part of the statute which is constitutional. The State maintains that it was incumbent upon the court to give the indictment the same construction it gave the statute and, consequently, it should have found the indictment, framed in the essential words of the statute, constitutionally valid to the same extent as the statute upon which it was based. Whether its case is within that part of the statute held constitutional is, according to the State's position, determinable only after the State has presented its case at trial; and whether it can prove that the accused was acting for monetary gain is simply an evidentiary matter, with a failure of proof in this particular requiring acquittal. The State advances the alternative argument that the statute is constitutional in all its parts and applies to those acting for monetary gain as well as those not so acting. It maintains in this connection that freedom of speech under the First Amendment is not an absolute right; that it is subject to reasonable restriction when necessary to safeguard the public interest; that the restrictions on speech contained in the statute, whether or not applied to representations made while acting for monetary gain, are limited

to narrow and well-defined circumstances, *viz.*, to knowing inducements or attempts to induce the transfer of real property or the discouragement of the purchase of real property in several specifically delineated particulars; that the statute is limited by its language "so as not to prohibit the casual conversation or statements made in a social or political context but prohibits essentially only the commercial exploitation associated with 'blockbusting' "; and that so viewed the statute is not broadly stifling of the fundamental personal liberties of any individual but is aimed specifically at prohibiting the public evil of "blockbusting" by the only means possible. The State concludes that since the statute may be constitutionally applied regardless of whether the representations are made for monetary gain it is completely unnecessary that an allegation specifying that the representations were made for monetary gain appear in an indictment charging a violation of the statute.

Appellee Wagner claims that the statute and indictment drawn in its language, which failed to charge that she made the prohibited representations while acting for monetary gain, are unconstitutionally overbroad and in clear violation of the First Amendment. She claims that while the State can regulate or proscribe speech which offends a paramount governmental interest, it can do so only by narrowly drawn and well-defined language. She contends that the statute condemns as criminal *any* statement, regarding the existing or potential proximity of certain persons, made by anyone who induces or attempts to induce anyone else to sell or buy real property, or who discourages anyone from buying real property; that, consequently, the statute prohibits all statements of advice or opinion, honestly believed by their speakers, and made under circumstances and for purposes which, while they may not all be worthy of approval, still do not involve any governmental concern; that this clear and deliberate overreaching of the Legislature in enacting the statute not only has the deleterious effect of inhibiting freedom of expression in a purely non-commercial, non-

action area, but also permits a conviction based solely on utterances which are fully protected by the First Amendment; and, consequently, since the statute is unconstitutional any indictment drawn within its language is constitutionally defective. Appellee claims, in short, that a necessary element of the criminal activity of "blockbusting" is that the accused person shall have acted for monetary gain; and that an indictment which does not allege this element of the offense not only fails to charge a crime but also subjects anyone to criminal conviction for the making of a constitutionally protected statement.

"Blockbusting" is the practice of inducing owners of property to sell because of the actual or rumored advent into the neighborhood of a member of a racial, religious or ethnic group. *Summer v. Township of Teaneck*, 251 A. 2d 761 (N. J.). Speaking for the Supreme Court of New Jersey in that case, Chief Justice Weintraub said, in depicting the evils of the practice of blockbusting, that "[s]ellers are exploited and hostility is excited both in those who are persuaded their economic interests are thus threatened and in the group of citizens who are given to understand their presence is a blight." At page 763. Appellee Wagner defines and describes the practice in her brief in these concise and succinct terms: "The practice of inducing homeowners to sell their homes at a price substantially lower than the fair market value by instilling the fear of a complete racial, religious, or ethnic turnover in their neighborhood is known as 'blockbusting' or 'panic peddling.' * * *

"In the classic blockbusting case, homes are purchased in a white neighborhood at depressed prices by a speculator and resold at inflated prices to Negroes who have a limited access to the housing market. Because the blockbuster is able to create an unfair market, both the seller and the purchaser lose. Sellers are forced to dispose of their homes by selling them in an artificially unfavorable market. Purchasers are forced to pay exorbitant sums to obtain housing.

"The blockbuster's technique consists of direct personal contacts with the white homeowners in a neighborhood. With telephone and door-to-door solicitation, he predicts an influx of blacks, a resulting deterioration of schools and an increase in crime in the neighborhood. Such predictions may often be fabricated or exaggerated. He will usually insist that property values are dropping rapidly and that every day the homeowner delays will be costly. He then offers ready cash to make the purchase. With enough repetition, his conduct may induce a neighborhood panic, and the once all-white or slightly integrated neighborhood rapidly becomes all black or ghettoized."

That it was the clear intention of the General Assembly of Maryland to broadly prohibit the practice of "blockbusting" by its enactment of Section 230A is beyond question. In describing the purpose of the Act (Chapter 285 of the Acts of 1966), the title specified that it was "to prohibit the practice of inducing the transfer of real property or discouraging the purchase of real property by knowingly representing the existing or potential proximity of property owned or occupied by persons of any particular race, color, religion or national origin or that this proximity of persons will result in certain happenings affecting the use or enjoyment of the property, *this practice being generally known as 'blockbusting.'* " (Emphasis supplied.) In a lengthy preamble to the Act, the Legislature declared the policy of the State respecting the practice of blockbusting as follows:

"* * * the practice known as 'blockbusting' is disruptive to the peace, tranquility, and general good order of the State of Maryland, and is usually engaged in by firms or individuals interested in reaping excessive financial profits from such activity. This practice cheats homeowners, increases intergroup tensions, promotes neighborhood instability, and creates ghettoes which do harm to the citizens of Maryland; * * *"

The Legislature further characterized "blockbusting" in the preamble as "this unscrupulous practice, which uti-

lizes and promotes panic, fear, and hate, usually for purposes of financial profit." The preamble further recited that it was the intention of the Legislature "to protect all its citizens and property owners from the efforts of 'blockbusters.'" In adding Section 230A to the Maryland Code, the Legislature directed in the title of the Act that it be codified under Article 56, title "Licenses," subtitle "Real Estate Brokers."

Statutes are to be construed reasonably with reference to the purpose sought to be accomplished and in light of the declared legislative policy. *Walker v. Montgomery County,* 244 Md. 98; *Cooley v. White Cross Centers,* 229 Md. 343; *State v. Blanken,* 11 Md. App. 460. Equally well settled is the principle that a duly enacted statute should be construed in a manner so as to uphold its constitutionality whenever it is reasonable to do so. *City of Baltimore v. Concord,* 257 Md. 132; *Deems v. Western Maryland Ry.,* 247 Md. 95; *Anderson v. State,* 12 Md. App. 186. If, then, there are two reasonable constructions and one of them renders a statute of doubtful constitutionality, courts will adopt that view of the enactment which establishes it free of fundamental constitutional objection. *Barrett v. Clark,* 189 Md. 116; *State v. Petrushansky,* 183 Md. 67; *Kirstel v. State,* 13 Md. App. 482.

Unlike the title of the Act and its preamble, the body of Section 230A makes no explicit reference to the "practice" of "blockbusting"; read superficially, the statute seemingly purports to prohibit the making of any of the proscribed representations by anyone for any purpose without regard to motivation. But a closer reading of the statutory terminology indicates a far more limited thrust. By its express terms, the statute punishes conduct of only those who undertake, whether or not *"acting"* for monetary gain, *"knowingly* [to] * * * *induce* or attempt to *induce"* persons to transfer, or not purchase, real property by making designated *"representations"* concerning the existing or potential proximity of certain persons to such real property. The particular use and as-

sociation, the collective "ring," of these terms, viewed in the overall context of the subject matter of the statute, raises some doubt as to the exact reach or breadth of the statute's provisions. In such circumstances, it is well settled that the title of the Act can be used in conjunction with the body of the statute to ascertain its intent, purpose and the effect. *Unsatisfied Fund v. Bowman,* 249 Md. 705; *Truitt v. Board of Public Works,* 243 Md. 375; *Eisler v. Eastern States Corp.,* 186 Md. 251; *Baltimore v. Deegan,* 163 Md. 234, 238. Similarly, while the preamble to the Act is not part of the Act itself, *Hammond v. Frankfeld,* 194 Md. 487, it may, like the title of the Act, be resorted to as an aid in construing the meaning and intent of a statute where its meaning is doubtful. *National Can Corp. v. Tax Comm.,* 220 Md. 418; *Gibson v. State,* 204 Md. 423; *Hammond v. Lancaster,* 194 Md. 462. And it has been repeatedly held that the title of a statute will limit an act to what the title intends. *State's Attorney v. Triplett,* 255 Md. 270; *Shub v. Simpson,* 196 Md. 177; *Buck Glass Co. v. Gordy,* 170 Md. 685; *Baltimore v. Deegan, supra.* In *Eisler v. Eastern States Corp., supra,* at 257, it was held that the statute "can be given no more extended operation than that explained in its *title or preamble.*" And in *Cons. Real Estate Co. v. Cashow,* 41 Md. 59, it was held that in order for a statute to be given a more extended operation than that expressed in its title or preamble, a legislative intent to that effect must be expressed in clear language.

Considering the substance of Section 230A in light of its title and preamble, we think the statute plainly aimed at and was limited in application to those who make the proscribed representations while engaged in, and as an integral part of the practice known as "blockbusting," as that term is herein defined in accordance with its commonly understood meaning. The title so indicates in unequivocal terms. The preamble identifies the practice of blockbusting, indicates generally its *modus operandi,* and delineates its evil consequences. Because "blockbusting," in its most fundamental form, is a pernicious means

of manipulating the market value of real estate (utilizing, in the words of the preamble, "panic, fear, and hate" as its essential tools), the Legislature recognized that the practice is engaged in *"usually* for purposes of financial profit." That it did not limit the statute's application strictly to those who would engage in "blockbusting" only for financial gain was due undoubtedly to its desire to protect the public against the ingenuity of those whose participation in the condemned "practice" could not readily be identified with a financial motivation.[1] *Cf. Cooley v. White Cross Centers, supra.* But whether the "blockbuster" engages in the prohibited activity for monetary gain or not, the harm wrought in either case is the same, *viz.,* homeowners are exploited and cheated, intergroup tensions are heightened, neighborhood instability is promoted, and ghettoes, one of the modern scourges of mankind, are created. Nothing in the free speech provisions of the First Amendment insulates from the application of criminal sanctions any person who, whatever his reasons, engages in a "practice" so distinctly odious and harmful to the State and its citizens. Interpreting Section 230A as it was intended by the Legislature, nothing in its provisions makes mere speech unlawful; the statute does not inhibit the expression or dissemination of ideas connected with a course of lawful conduct. What it does prohibit is a course of conduct manifested in part by the making of the proscribed representations; to the extent that the "practice" of "blockbusting" involves the making of such prohibited representations, they are clearly beyond the protection of the First Amendment. See *United States v. Bob Lawrence Realty, Inc.,* 313 F. Supp. 870 (D.C.N.D. Ga.). It has long been fundamental that where speech is an integral part of unlawful conduct, it has no constitutional protection. *Giboney v. Empire Storage & Ice Co.,* 336 U. S. 490. The principle has been applied to a city ordinance de-

---

1. By codifying the Act under the subtitle "Real Estate Brokers," it was undoubtedly recognized by the Legislature that the persons most likely to engage in "blockbusting" would be those commercially involved in the buying and selling of real estate.

signed to prohibit the practice of blockbusting. *Chicago Real Estate Board v. City of Chicago,* 224 N.E.2d 793 (Ill.). See also *United States v. Mintzes,* 304 F. Supp. 1305 (D.C. Md.) ; *United States v. Hunter,* 324 F. Supp. 529 (D.C. Md.).

The purpose of the Act, as shown by its title, preamble and throughout its provisions, was not to restrict freedom of speech or thought or expression, nor does it do so. *Cf. Shub v. Simpson, supra.* The statute, as herein construed, does not prohibit the mere making of statements, the giving of advice or opinions by anyone, including those engaged in the real estate business, in any context, with respect to the existing or potential proximity to real estate of persons of a particular race, religion, or national origin, unless such statements come within the ambit of those proscribed by the statute and are made by a person while engaged in, and as an integral part of the practice of blockbusting.[2]

We conclude that Section 230A is constitutional and that the indictment drawn in its language was not defective. It was not necessary to allege in the indictment that the accused was acting for monetary gain since, whether she was or not, was not an essential averment; the indictment charged an offense in either event. See *Ward v. State,* 9 Md. App. 583; *Baker v. State,* 6 Md. App. 148.

> *Order dismissing indictment vacated; indictment reinstated; case remanded for trial; costs to be paid by appellee.*

---

2. In enacting the Fair Housing Act of 1968, 42 U.S.C.A. 3604-(e), the Congress prohibited discrimination in the sale or rental of housing by making it unlawful to make representations "for profit" similar to those prohibited by Section 230A. That the federal law requires a profit motivation as a condition precedent to its violation does not mean that the Maryland statute not requiring such a motive is unconstitutional. Indeed, the civil counterpart of the federal law in this State, Maryland Code, Article 49B, Sections 21-30, does not require proof of a profit motivation. See particularly Section 22A declaring it an "unlawful discriminatory housing practice" to make the identical representations prohibited by Section 230A, "whether or not acting for monetary gain."