CITY OF CLEVELAND HEIGHTS, APPELLEE, *v.*
LINDSAY, APPELLANT.
[Cite as Cleveland Heights v. Lindsay (1979),
65 Ohio App. 2d 215.]

(No. 38916—Decided August 9, 1979.)

CORRIGAN, J.   Defendant-appellant, Delores Lindsay, appeals from a conviction for violating Section 749.04 of the Codified Ordinances of Cleveland Heights (prohibition of home solicitation). The material facts in this case are not in dispute. Mrs. Claudia Waychoff testified that she received a telephone call from a person who identified herself as the appellant. The purpose of the call was to seek a real estate listing from Mrs. Waychoff. According to the complaint and affidavit charging appellant, the call was made on September 6, 1977. The witness further testified that she had previously placed her name on a list indicating that she did not want to be solicited by real estate brokers. This list is maintained by the City Manager.

Mrs. Barbara Roderich testified that she was employed by the city of Cleveland Heights to maintain the non-solicitation

list. She further testified that a copy of this list, bearing Mrs. Waychoff's name, had been sent to the appellant's employer by registered mail. Margo Malone, an administrative assistant in the Cleveland Heights Housing Service, also testified that Mrs. Waychoff's name was on the non-solicitation list.

On October 5, 1977, appellant was charged with violating Section 749.04 of the Codified Ordinances of Cleveland Heights (hereinafter referred to as Section 749.04). This ordinance provides, in part, as follows:

"No real estate broker, real estate salesman or other person shall telephone or personally call upon, or mail or hand deliver literature, to the home of an owner of a single or two-family dwelling unit in this City, for the purpose of securing a listing for sale of real estate of such homeowner, or for any purpose relating to sale of such owner's property, after receiving a written notice not to communicate with such homeowner for such purpose, so long as the notice is submitted in accordance with the procedures outlined herein.

"The provisions of this ordinance shall not be applicable to any person who has publicly listed and/or advertised his home for sale."

Prior to the commencement of trial, appellant filed a motion to dismiss the complaint, alleging that Section 749.04 was unconstitutional. The motion was overruled by the court and the case proceeded to trial. Subsequently, appellant was found guilty of violating the ordinance. From that order appellant filed a timely notice of appeal. Four assignments of error have been raised on appeal:

I. "The Cleveland Heights antisolicitation ordinance violates freedom of speech guaranteed by the Constitution of the United States and the state of Ohio."

II. "The Cleveland Heights antisolicitation ordinance conflicts with Ohio Revised Code, Chapter 4735, and is therefore unconstitutional."

III. "The Cleveland Heights antisolicitation ordinance is discriminatory as applied; is contrary to the terms of the Ohio Revised Code, Section 4112.02(10) [sic]; and is unconstitutional under the Fourteenth Amendment of the United States Constitution."

IV. "The Cleveland Heights antisolicitation ordinance creates a discriminatory classification against real estate

brokers and is therefore violative of the Fourteenth Amendment of the United States Constitution."

Appellant's fourth assignment of error will be considered first. Appellant argues that Section 749.04 creates a discriminatory classification against real estate brokers and salesmen. The basis of appellant's argument is that the ordinance treats one type of service enterprise, real estate, different from others, and is therefore in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Classification of different groups by statute is not per se unconstitutional. As long as the classification bears some reasonable relationship to a legitimate governmental purpose, the classification will be upheld. *Allied Stores of Ohio* v. *Bowers* (1959), 358 U. S. 522, 527. See, also, *Lindsley* v. *Natural Carbonic Gas Co.* (1911), 220 U. S. 61.

The ordinance at issue in the present case is part of a legislative attempt to prevent blockbusting in the city of Cleveland Heights. Blockbusting has been defined as "the practice of inducing owners of property to sell because of the actual or rumored advent into the neighborhood of a member of a racial, religious or ethnic group." *Summer* v. *Teaneck* (1969), 53 N.J. 548, 551, 251 A. 2d 761, 762-63. The blockbuster threatens the economic interests of homeowners by making representations that an influx of a minority group in the neighborhood will lead to rapidly falling property values, increased crime rate, deteriorating schools and other undesirable conditions. The effect of blockbusting practices is to create panic sales in a community housing market. Homeowners are induced to sell their homes for a price below its fair market value because of a racial, religious or ethnic shift in the community. Thus, a slight shift in the makeup of the community will be used to generate an even greater changeover. As a result of such practices, sellers are exploited and hostility is generated between the recent and the established homeowners in the neighborhood. *Summer* v. *Teaneck, supra,* at page 551; see, generally, Note, Blockbusting, 59 Georgetown L.J. 170. Although no reported decision in Ohio has been discovered deciding this issue, courts of other jurisdictions have upheld legislation designed to prevent blockbusting practices. See, *e.g., United States* v. *Bob*

*Lawrence Realty* (C.A. 5, 1973), 474 F. 2d 115, certiorari denied (1973), 414 U. S. 826; *Chicago Real Estate Bd.* v. *Chicago* (1967), 36 Ill. 2d 530, 224 N.E. 2d 793; *State* v. *Wagner* (1972), 15 Md. App. 413, 291 A. 2d 161; *Howe* v. *St. Louis* (Mo. 1974), 512 S.W. 2d 127. See, generally, Annotation 34 A.L.R. 3d 1432.[1]

Blockbusting practices create instability in both housing markets and neighborhoods. The prevention of such practices is a legitimate function of the city council. Because block-busting practices are exclusive to the real estate industry and are not committed by other types of residential solicitors, there is a rational basis between the purpose of the ordinance and the restrictions placed on real estate brokers and salesmen. Consequently, the classification created by the operation of Section 749.04 is not in conflict with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Appellant's fourth assignment of error is without merit.

As her first assignment of error appellant argues that Section 749.04 constitutes an abridgement of her First Amendment right to freedom of speech. The city argues, on the other hand, that an ordinance may lawfully restrict the right of speech of real estate brokers and salesmen in order to protect residential homeowners from unwanted intrusions.[2] Thus, the issue raised by appellant's first assignment of error concerns conflicting rights of individuals.

An issue similar to the one currently being raised was addressed by the court in *Rowan* v. *United States Post Office Dept.* (1970), 397 U. S. 728. In *Rowan* the plaintiffs initiated a declaratory judgment action to determine the constitutionality of a federal statute which gave a homeowner the right to have his name removed from mailing lists used by publishers and distributors of sex-oriented materials. In upholding the constitutionality of the statute, the court stated that the plaintiffs' First Amendment rights are not absolute, but must be bal-

---

[1] Blockbusting practices are also illegal under the Ohio Revised Code. See R. C. 4112.02(H)(10).

[2] The homeowner's right to privacy is only one argument raised by the city in favor of the ordinance. As was stated earlier, with respect to appellant's fourth assignment of error, the primary justification of the ordinance is to prevent panic sales of homes as a result of a shift in the demographic makeup of the community.

anced against the homeowner's right to be left alone. *Id.,* at page 736. See, also, *Breard* v. *Alexandria* (1951), 341 U. S. 622, 644. The court in *Rowan, supra,* at pages 737 to 738, expressly rejected the plaintiffs' argument that a vendor had a constitutional right to send unwanted materials to a homeowner, stating that there was nothing in the Constitution which would compel a person to listen to an unwanted speech. Cf. *Hynes* v. *Mayor and Council of Oradell* (1976), 425 U. S. 610, 618-19.

The court's holding in *Rowan* was consistent with its prior decision in *Martin* v. *Struthers* (1943), 319 U. S. 141. In *Martin* the court struck down a municipal ordinance which prohibited the door-to-door distribution of handbills and circulars. The solicitor in that case argued that the ordinance violated her First Amendment right to freedom of speech. The Supreme Court agreed and declared the ordinance unconstitutional. In doing so, the court did not state that vendors had an absolute right under the First Amendment to intrude upon a homeowner. Rather, the court held that the decision whether to listen to the solicitor should be made by the individual, not the municipality. *Id.,* at pages 147-48. Cf. *Organization for a Better Austin* v. *Keefe* (1971), 402 U. S. 415, 420.

The court's decisions in *Martin, supra,* and *Rowan, supra,* involved the balancing of the solicitor's right of free speech against the homeowner's right of privacy.[3] The effect of these decisions is that although a statute which imposes a complete prohibition on solicitation will be unconstitutional, a statute which provides a mechanism by which the homeowner may choose whether he wants to be solicited will not be constitutionally infirm.

An important distinction between *Martin, supra,* and

---

[3] The Supreme Court has afforded the right to privacy constitutional protection. Cf. *Whalen* v. *Roe* (1977), 429 U. S. 589; *Griswold* v. *Connecticut* (1965), 381 U. S. 479. These cases involved the right of privacy against governmental intrusion. In Ohio, a person also has a right of privacy against intrusions by individuals. See *Housh* v. *Peth* (1956), 165 Ohio St. 35, 38. This right of privacy, however, is not absolute. In *Shibley* v. *Time* (1975), 45 Ohio App. 2d 69, this court held that an action for invasion of privacy would not lie against advertisers who sold mailing lists which included the plaintiff's name. The court stated that absent a statute to the contrary, an individual's right to privacy did not extend to the mailbox. *Id.,* at page 73. The holding in *Shibley* is distinguishable from the issue raised in the present case, for the effect of Section 749.04 was to extend, by ordinance, the right of privacy to include the mailbox.

*Rowan, supra,* is the type of speech which was attempted to be expressed. In *Martin* the solicitor was distributing leaflets concerning a religious organization. In *Rowan,* however, the attempted solicitation was commercial in nature. The First Amendment right asserted by appellant in the present case also involves commercial speech. In the past the Supreme Court had held that commercial speech was outside of the protection of the First Amendment. *Valentine* v. *Chrestensen* (1942), 316 U. S. 52. The commercial speech exception to the First Amendment was slowly eroded by subsequent decisions. See *Bigelow* v. *Virginia* (1975), 421 U. S. 809. Thus, the fact that the speech at issue proposes a commercial transaction and does not involve any exposition of ideas does not mean that it lacks First Amendment protection. *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council* (1976), 425 U. S. 748, 761-62.[4]

In support of her argument, appellant places primary reliance on the case of *Linmark Associates* v. *Willingboro* (1977), 431 U. S. 85. In *Linmark* a local ordinance prohibited any "for sale" or "sold" signs to be displayed in front of residential homes. The purpose of the ordinance was to prevent the flight of white homeowners as a result of an influx of minority groups moving into the township and to establish a stable, racially integrated community. The Supreme Court held that the ordinance constituted a violation of the First Amendment. In arriving at this conclusion, the court placed primary emphasis on the interest of society in the free flow of information. *Id.,* at page 92. The court also noted that the ordinance regulated the content of the information rather than the time, place or manner of the communication. *Id.,* at page 94. Considering both of these factors, the court stated that the ordinance acted to suppress legitimate commercial information which was of interest to the homeowner in making a decision where to live.

The holding in *Linmark, supra,* is distinguishable from the issue raised by appellant in the present case. To begin with, the ordinance at issue in *Linmark* was a total prohibition of real estate signs by the municipality. In striking down the

---

[4] For a discussion of the evolution of commercial speech and the First Amendment, see Tribe, American Constitutional Law 651, Section 12—15 (1978).

ordinance, the court noted that the municipality failed to establish that the objective of the ordinance could not be obtained in a less restrictive manner. *Id.*, at page 95. The antisolicitation ordinance in the present case does not impose a complete prohibition on real estate brokers and salesmen from soliciting business in Cleveland Heights. Instead, it prohibits solicitation from those homeowners who do not wish to be solicited. Thus, this is not a case in which the judgment of the community has been substituted for the judgment of the individual homeowner. *Martin* v. *Struthers, supra,* at pages 143-44.

In addition to the above, the court in *Linmark, supra,* at page 94, noted that the ordinance did not "restrict a mode of communication that 'intrudes on the privacy of the home***.' " Unlike a "for sale" sign posted on a front lawn, unsolicited and unwanted leaflets, telephone calls and sales representatives go beyond the outside limits and penetrate into the privacy of the home. A further distinction between *Linmark* and the present case is the operation of the ordinance at issue. The effect of the ordinance in *Linmark* was to impede the free flow of information concerning housing sale activities in the community. *Id.*, at pages 95-97. The court stated that this information was of vital interest to the residents, bearing directly on their decision where to live. *Id.*, at page 96. See, also, *Virginia State Bd. of Pharmacy, supra,* at pages 763-65. In the present case, although the ordinance acts as a mechanism by which real estate brokers and salesmen are restricted in soliciting business, the restriction is imposed not by the ordinance, but by the homeowner who wishes to avail himself to the protection of the ordinance. Thus, the decision of whether to receive the information which is being offered by the real estate broker or salesman is made by the individual and not mandated by statute. See *Virginia State Bd. of Pharmacy, supra,* at page 770.

Section 749.04 attempts to balance the free speech rights of real estate brokers and salesmen against the privacy rights of individual homeowners. Like the statute at issue in *Rowan, supra,* the ordinance does not impose an absolute bar on solicitation. Rather, it gives the individual the option to prohibit such solicitation if he desires to do so. Thus, the ordinance does not infringe on appellant's First Amendment rights. Ac-

cordingly, appellant's first assignment of error is not well taken.

As her second assignment of error, appellant argues that Section 749.04 conflicts with the provisions of R. C. Chapter 4735. This chapter of the Revised Code governs the regulation of real estate brokers. Section 3, Article XVIII, of the Ohio Constitution grants municipalities the power to enact ordinances concerning local police, sanitary and other similar types of regulations as long as the ordinances are not in conflict with general laws. Included in the municipalities' local police powers is the power to prohibit. *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113. If a conflict between a general law and an ordinance arises, the ordinance will be unconstitutional. *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53. See, also, *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143.

Real estate brokers are licensed by the Superintendent of Real Estate. R. C. 4735.08. Appellant argues that because of the authority of the Ohio Real Estate Commission and the superintendent over real estate brokers, any municipal ordinance which restricts the rights of brokers must be in conflict with R. C. Chapter 4735, and therefore, is unconstitutional. The mere fact, however, that the subject matter of a municipal ordinance overlaps with that of a state statute does not mean that the two are in conflict. *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112, 115. In determining whether a local ordinance is in conflict with a general law, the court in *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, stated, in the second paragraph of the syllabus, that the test to be applied was "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

"A license is a permission granted by some competent authority to do some act which, without such permission, would be illegal.\*\*\*" *State, ex rel. Zugravu,* v. *O'Brien* (1935), 130 Ohio St. 23, 25. R. C. Chapter 4735 governs the licensing of real estate brokers. Section 749.04, however, is not a licensing ordinance. The ordinance does not grant permission to do an act which would otherwise be illegal. Nor does the ordinance impose any requirements in addition to those contained in R. C. Chapter 4735 on real estate brokers and salesmen practicing in Cleveland Heights. The purpose of the ordinance is to protect the privacy rights of the residents and

to preserve the stability of the community. It is not to control the real estate practice within the municipal boundaries. Moreover, while a real estate license gives an individual permission to solicit real estate sales, it does not confer upon him an unconditional right to do so. Thus, the fact that the ordinance operates to restrict real estate brokers and salesmen, as far as homeowners subject to solicitation, does not conflict with the provisions contained in R. C. Chapter 4735. Consequently, appellant's second assignment of error is without merit.

Appellant argues as her third assignment of error that the Cleveland Heights ordinance is discriminatory in its application, and is therefore contrary to R. C. 4112.02[5] and the Fourteenth Amendment to the United States Constitution. Appellant alleges that white homeowners will generally list their houses for sale with white brokers. She further alleges that white brokers will sell only to white purchasers. Thus, appellant concludes that the only way a black broker can break into the market is by going directly to the homeowner. Appellant alleges that the purpose of Section 749.04 is to prevent blacks from entering the Cleveland Heights housing market by cutting off the only means of access—that is, by direct solicitation.

A municipal ordinance which bears a real and substantial relationship to the public health, safety, morals or general welfare has a presumption of validity. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127. Although this is a rebuttable presumption, the burden is on the party challenging the ordinance to establish that it is invalid. *Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 70. In the present case appellant presented no evidence in support of the assumptions which underlie her argument against the constitutionality of the ordinance.

There are no facts in the record from which this court

---

[5] R. C. 4112.02(H)(11) provides that it is an unlawful discriminatory practice to:

"Deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization, or other service, organization, or facility relating to the business of selling or renting housing accommodations, or to discriminate against any person in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, national origin, handicap, or ancestry."

could determine that the ordinance at issue is discriminatory in its application. Consequently, appellant has failed to rebut the ordinance's presumption of validity. Therefore, her third assignment of error is not well taken. There being no other assignments of error raised by the appellant, the judgment of the trial court is affirmed.

*Judgment affirmed.*

KRENZLER, P. J., and JACKSON, J., concur.