The **GREATER BALTIMORE BOARD OF REALTORS, INC.; Real Estate Brokers of Baltimore, Inc.; James H. Bateman; Michael Cassell; and Joseph McGraw, Plaintiffs,**

v.

**BALTIMORE COUNTY, MARYLAND, Defendant.**

**Civ. No. H–90–1956.**

United States District Court, D. Maryland.

Nov. 29, 1990.

**194**

Peter H. Gunst, Karen R. Johnson, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for plaintiffs.

Arnold Jablon, County Atty., and L. Paul Snyder, Jr., Associate County Atty., Towson, Md., for defendant.

ALEXANDER HARVEY, II, Chief Judge.

Presently pending before the Court in this civil action are cross-motions for summary judgment filed on behalf of the parties. Plaintiffs are two real estate trade associations, two individual real estate agents, and one resident of Baltimore County who is seeking information regarding the purchase and sale of County real estate. There is only one remaining defendant in the case.[1] Plaintiffs are here suing Baltimore County, Maryland, claiming that § 14–26 of the Baltimore County Code, which restricts the advertising activities of real estate professionals, violates plaintiffs' constitutional rights under the First and Fourteenth Amendments to the Constitution.

Plaintiffs initially sought a preliminary injunction which would prohibit the County from enforcing §§ 14–26 and 14–29 of the County Code. Following a status conference held with the Court on September 4, 1990, it was agreed that the issues might be more appropriately addressed by way of motions for summary judgment. Accordingly, plaintiffs moved for summary judgment, relying on the memorandum and exhibits which they had filed in support of their motion for a preliminary injunction. Defendant in turn filed a cross-motion for summary judgment, claiming that the Code provisions in question were constitutional, and plaintiffs then filed an opposition to the cross-motion together with further exhibits.

---

1. Pursuant to a Stipulation approved by the Court, the County Executive of Baltimore County, the County Council and members of the County Council were dismissed as defendants.

Memoranda both in support of and in opposition to the pending motions have been reviewed, and oral argument has been heard in open court. For the reasons to be stated, plaintiffs' motion for summary judgment will be granted, and defendant's motion for summary judgment will be denied.

## I

### Pertinent Facts and County Code Provisions

Plaintiff Greater Baltimore Board of Realtors, Inc. is a tax-exempt, voluntary association of real estate agents operating in Baltimore City and in Baltimore County. Plaintiff Real Estate Brokers of Baltimore, Inc. is a minority trade association of real estate professionals who conduct business in both the City and the County. Plaintiffs Cassell and Bateman are registered real estate agents doing business in Baltimore County, and plaintiff McGraw is a resident of Baltimore County who asserts that he would like to receive information regarding the purchase and sale of real estate.

At issue in this case are certain provisions of the Baltimore County Code (hereinafter the "County Code"), enacted for the purpose of eliminating an unsavory real estate practice known as "blockbusting." Blockbusting is a practice whereby certain real estate speculators capitalize on fears in white neighborhoods that the racial composition of the area may include more black families in the immediate future. Such real estate brokers earn large profits by purchasing homes at a reduced price from fearful white owners anxious to sell and then selling those homes to blacks at an inflated price. *See* Power, G., *Apartheid Baltimore Style: The Residential Segregation Ordinances of 1910–1913*, 42 U.Md.Law Rev. 289, 321 (1983). Because blockbusting may generate panic selling and increased racial tension, various local and state governments have in the past enacted legislation designed to combat this practice.

In February, 1972, the Baltimore County Council enacted §§ 14–25 through 14–29 of Article III of the County Code, entitled "Real Estate Solicitations and Blockbusting." Section 14–26 provides as follows:

It shall be unlawful for any person, firm, partnership, association, or corporation to solicit by canvassing the purchase, sale or lease of residential property located in Baltimore County by any means, including, but not limited to, door to door solicitation in person or by telephone, distribution of circulars, handbills, cards or advertisements. The following shall not be considered soliciting by canvassing:

(1) Advertisements in bona fide newspapers of general circulation in the area, radio, or television.

(2) Literature distributed through the United States mails.

(3) Legitimate personal referrals.

(4) Contacts with property owners resulting from the owner having personally advertised the property for sale.

(5) Solicitation for the purpose of obtaining information for appraisals or similar collecting of general sales or market data.

Also in 1972, the County Council enacted § 14–28 of Article III of the County Code which specifically prohibited "blockbusting." That Section defined blockbusting as an inducement or attempt to induce a person to sell or rent a dwelling by representations regarding the entry or prospective entry into the neighborhood of persons of a particular race, color, religion, or national origin. In 1989, § 14–28 was repealed, but not § 14–26. Thus, § 14–26, which contains the challenged restrictions on real estate activities, remains today as an enforceable provision of County law. Penalties for a violation of § 14–26 include a fine of up to one thousand dollars ($1,000) or six months imprisonment. *See* § 14–29, County Code.

## II

### Summary Judgment Principles

■ It is well settled that a party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to

judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see also Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). This burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

One of the purposes of Rule 56 is to require a party opposing a motion for summary judgment, in advance of trial and after a motion has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick, supra*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). In the absence of such a minimal showing, a party should not be required to undergo the considerable expense of preparing for and participating in a trial. *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir.1969).

In this particular case, the parties agree that the essential facts are not in dispute and that questions of law are presented. Accordingly, the issues here may appropriately be addressed by way of the pending cross-motions for summary judgment.

## III

### Discussion

In moving for summary judgment, plaintiffs contend that § 14–26 of the County Code has violated and continues to violate their rights under the First and Fourteenth Amendments. Specifically, plaintiffs assert that regulations curtailing the advertising activities of real estate agents further no substantial governmental interest because the practice of blockbusting no longer exists in Baltimore County. In addition, plaintiffs contend that the statute is unconstitutionally overbroad and vague.

In its cross-motion for summary judgment, defendant asserts that the challenged provisions of the County Code are constitutional because they further a substantial governmental interest and are narrowly tailored to directly advance that interest.

### (a)
### Standing

■ As an initial matter, defendant has raised the question of plaintiffs' standing to bring suit, contending that plaintiffs may not maintain this action because they have not been threatened with criminal prosecution as a result of violating the Code. There is no merit to this argument.

In *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988), the Supreme Court held that a plaintiff need not be faced with imminent prosecution before bringing suit under the Declaratory Judgment Act. In *American Booksellers*, two book store owners challenged a Virginia statute which prohibited the display of sexually explicit materials for commercial purposes in a manner accessible to juveniles. In holding that plaintiffs had standing to sue even in the absence of any enforcement proceedings, the Supreme Court stated that the requirements of standing are met if "the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." 484 U.S. at 392, 108 S.Ct. at 642.

The Court also noted that in the First Amendment context litigants may challenge a statute on the ground that its very existence may cause others to refrain from constitutionally protected speech or expression. *Id.* at 392–93, 108 S.Ct. at 642–43, citing *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 956–57, 104 S.Ct. 2839, 2846–47, 81 L.Ed.2d 786 (1984). The Court concluded that the danger posed by the statute was largely one of self-censorship, "a harm that can be realized even without an actual prosecution." *Id.*

The decision in *American Booksellers* is dispositive of the issue of standing in this case. The principles enunciated by the Supreme Court in that case apply whether a challenged statutory provision prohibits the display of sexually explicit materials or

whether the prohibition relates to communications concerning the availability of real estate services. The Supreme Court has clearly held that under circumstances such as those present here a plaintiff need not wait until prosecution is imminent before challenging a statute on First Amendment grounds. For these reasons, this Court concludes that plaintiffs have standing to bring this civil action.

(b)

*Constitutionality of § 14–26*

█ The First Amendment, as applied to the states through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. *Central Hudson Gas & Electric v. Public Service Commission*, 447 U.S. 557, 560, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980), citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Commercial speech is entitled to such protection because, in addition to furthering the rights and interests of the speaker, it assists consumers and furthers the societal interest in the dissemination of information. *Central Hudson*, 447 U.S. at 561–62, 100 S.Ct. at 2348–49.

In *Central Hudson*, the Court enunciated the following test for determining the constitutionality of regulations directed to commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. at 2351.

The *Central Hudson* test has previously been applied in this Court in a case in which the constitutionality of restraints on real estate advertising had been challenged. *See Greater Baltimore Board of Realtors v. Hughes*, 596 F.Supp. 906 (D.Md.1984) (Murray, J.) (state ban on posting "For Sale" signs held unconstitutional); *see also South Suburban Housing Center v. Board of Realtors*, 713 F.Supp. 1068 (N.D.Ill.1988) (community anti-solicitation ordinances held unconstitutional). This Court would agree with the reasoning of those two opinions that the *Central Hudson* test should be applied for a determination of the constitutionality of statutory provisions like those under attack here.

█ The first prong of the *Central Hudson* test addresses whether the type of speech involved is protected by the First Amendment. It is not disputed by the parties in this case that the speech prohibited by the County Code is commercial speech entitled to the full protections of the First Amendment. Indeed, the Supreme Court has stated that information pertaining to real estate sales is of vital interest to residents of an area because "it may bear on one of the most important decisions they have a right to make: where to live and raise their families." *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 96, 97 S.Ct. 1614, 1620, 52 L.Ed.2d 155 (1977) (holding unconstitutional a township restriction on "For Sale" signs posted on property). Since commercial expression relating to the availability of real estate agent services or of properties for sale is not inherently unlawful or misleading, it is entitled to First Amendment protection.

The second prong of the *Central Hudson* test involves the nature of the governmental interest and the question whether the asserted interest is substantial. In this case, Article III of the County Code, which includes § 14–26, is entitled "Real Estate Solicitations and Blockbusting." The governmental interest articulated by defendant is that of eliminating blockbusting. This interest has been broadly characterized as the promotion of racial or economic stability in the face of a volume of real estate transactions. *Hughes*, 596 F.Supp. at 921. The putative objective of an anti-blockbusting statute is therefore to promote stable racial integration of neighborhoods and

avoid "panic selling" and "white flight" in the community. *Id.* at 911.

As the Supreme Court concluded in *Linmark*, the governmental interest in promoting stable, racially integrated housing is a vital goal the importance of which cannot be questioned. 431 U.S. at 94, 97 S.Ct. at 1619. Judge Murray made a similar determination on the record before him in *Hughes*. 596 F.Supp. at 922. For the reasons stated in *Linmark* and *Hughes*, this Court finds and concludes that the governmental interest of Baltimore County in seeking to deter blockbusting is unquestionably substantial.

Plaintiffs contend that this professed governmental interest cannot be substantial because it addresses only the threat of blockbusting rather than its actual practice. Plaintiffs argue that the mere threat of blockbusting cannot justify restraints on free speech. According to plaintiffs, unless defendant produces some evidence that blockbusting exists in the County, the mere recitation that provisions of the County Code are designed to serve the goal of racial equality will not suffice to establish a substantial governmental interest. *See Weinberger v. Weisenfeld*, 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975).

As noted hereinabove, in applying the *Central Hudson* test to a state statute banning the posting of "For Sale" signs, Judge Murray of this Court found that the State had asserted a substantial governmental interest in combatting blockbusting. *Hughes*, 596 F.Supp. at 922. In so holding, Judge Murray noted that the Maryland Real Estate Commission, in sponsoring protective legislation, had thereby attempted to further a governmental interest in promoting stable integration of Baltimore area neighborhoods. Judge Murray accordingly held that the asserted governmental interest was real and substantial and had not been set forth as a mere recitation.

In this particular case, plaintiffs can point to no evidence in the record indicating that the County Council, in enacting § 14–26 in 1972, acted with any interest other than the intent to combat blockbusting and promote stable racial integration in Baltimore County neighborhoods. Plaintiffs' bald assertion that the County, in enacting this provision, had the discriminatory intent to preserve the existing racial composition of Baltimore County has no support in the affidavits and exhibits filed. The County Code was enacted in 1972 at a time when fear of blockbusting was prominent throughout the Baltimore area. Thus, the second prong of the *Central Hudson* test has been satisfied by the defendant in this case.

The third prong of the *Central Hudson* test requires the Court to find, if the challenged statute is to be upheld, that it directly advances the asserted governmental interest. Once again, plaintiffs argue that, since the practice of blockbusting no longer exists in Baltimore County, § 14–26 cannot now directly further the governmental interest by combatting blockbusting, "panic selling," or "white flight." On the record here, this Court would agree.

In *Hughes*, Judge Murray held unconstitutional a Maryland statute banning "For Sale" signs, the purpose of the statute being to combat blockbusting. Although the governmental interest in promoting stable integration was found to be substantial, the Court in *Hughes* ruled that insufficient evidence had been presented that blockbusting existed in Baltimore City and that therefore the statute did not directly advance the governmental interest of promoting racial integration. 596 F.Supp. at 923. Because blockbusting practices no longer occurred, "the court [could] not accept defendants' assertion that the ban directly advances the goal of stable integration by preventing the occurrence of panic selling." *Id.*

In this case, plaintiffs have submitted the affidavit of Dr. Michael Conte in support of their contention that blockbusting no longer exists in Baltimore County. Dr. Conte's affidavit relies on statistics which demonstrate that from 1960–1980 the black population in Baltimore County rose at a steady rate and that during the same period the price of residential housing also rose. These statistics indicate a period of

normal County growth in both population and real estate values which refute the contention that blockbusting has occurred in Baltimore County during the relevant time period. Plaintiffs' position is further supported by Judge Murray's finding that, as of 1984, blockbusting no longer existed in Baltimore City.[2] *Hughes,* 596 F.Supp. at 922. Moreover, the repeal by the County Council in 1989 of § 14–28 (the provision which expressly prohibited blockbusting) indicates that defendant itself does not consider blockbusting to be an evil present today in the County.

In moving for summary judgment and in opposing plaintiff's motion, defendant has filed no exhibits or affidavits which support its contention that blockbusting is an evil present today in Baltimore County. Nor has defendant attempted to rebut plaintiffs' evidence that the real estate market is not now subject to the effects of blockbusting.[3] Defendant in this case has done little more than merely rely upon statements of various courts that, if the practice of blockbusting exists, governmental regulation narrowly tailored to eliminate that evil is permissible. *See* e.g. *United States v. Bob Lawrence Realty, Inc.,* 474 F.2d 115 (5th Cir.1973); *Brown v. State Realty Co.,* 304 F.Supp. 1236 (N.D.Ga.1969). The findings and conclusions of these other courts hardly constitute material evidence that blockbusting today continues to be practiced in Baltimore County.

Since plaintiffs have established by competent evidence that blockbusting no longer exists in Baltimore County, defendant in opposing plaintiffs' motion may not rest on mere allegations or denials but, by affidavits or otherwise as provided in Rule 56, F.R.Civ.P., must set forth specific facts contradicting plaintiffs' proof. *See* Rule 56(e). No such supporting evidence has been submitted by defendant. On the record here, this Court concludes that since the practice of blockbusting no longer exists in Baltimore County, § 14–26 cannot further the professed governmental interest of combatting this evil.

■ Furthermore, defendant has failed to meet in this case the fourth prong of *Central Hudson,* namely that § 14–26 must be narrowly tailored to serve only the asserted governmental interest. The Supreme Court has held that a statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. *Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988), citing *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808–810, 104 S.Ct. 2118, 2130–31, 80 L.Ed.2d 772 (1984). A complete ban on speech may be narrowly tailored only if each activity within the scope of the proscription is an appropriately targeted evil. *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2502.

■ Section 14–26 of the County Code is not narrowly tailored for a number of reasons. Unlike the corresponding Maryland statute which contains similar prohibitions, the provisions challenged in this case do not require the County to make a finding that a particular area is susceptible to blockbusting before the restrictions of § 14–26 are imposed. Thus, the Code unconstitutionally restricts the activities of real estate agents in neighborhoods in which the governmental interest in eliminating blockbusting cannot be served. Such an overbroad application of § 14–26 violates the dictates of *Central Hudson.*

■ Moreover, the provision in question is not narrowly tailored because it proscribes activities beyond those which might induce blockbusting. Plaintiffs correctly note that § 14–26 prohibits a real estate agent from leaving circulars in a store, from posting signs in a retail establish-

---

**2.** With its large black population, Baltimore City would reasonably be expected to have a much greater blockbusting problem than Baltimore County. Indeed, the "white flight" asserted in *Hughes* was from the City to the County, while no contiguous area has been suggested for any flight from Baltimore County.

**3.** Defendant has been unable to cite any single instance in recent years in which this Code provision was enforced, thus supporting plaintiffs' position that blockbusting is no longer occurring in Baltimore County.

ment, and from providing any paraphernalia bearing the real estate agent's name to a local charity. Conduct of this sort hardly promotes the practice of blockbusting. The prohibitions listed herein demonstrate to the Court that § 14–26 is much too broad to properly serve its intended purpose.

In seeking summary judgment in its favor, defendant relies principally on a decision of the Court of Special Appeals of Maryland which found the Maryland anti-blockbusting statute to be constitutional. *State v. Wagner,* 15 Md.App. 413, 291 A.2d 161 (1972). Section 230A of Article 56 of the Maryland Code prohibits the inducement or attempt to induce the sale of property "by representations regarding the existing or potential proximity of real property owned, used, or occupied by persons of any particular race, color, religion, or national origin." In holding the statute constitutional, the Maryland Court of Special Appeals said:

> Interpreting Section 230A as it was intended by the Legislature, nothing in its provisions makes mere speech unlawful; the statute does not inhibit the expression or dissemination of ideas connected with a course of lawful conduct. What it does prohibit is a course of conduct manifested in part by the making of the proscribed representations; to the extent that the "practice" of "blockbusting" involves the making of such prohibited representations, they are clearly beyond the protection of the First Amendment.

*Wagner,* 15 Md.App. at 423, 291 A.2d 161. Because the statute was narrowly drawn to proscribe only unlawful conduct, the Court found it to be constitutional. *Id.*

It is apparent that the Maryland state statute is clearly distinguishable from § 14–26 of the County Code. Section 230A expressly prohibits blockbusting but does not proscribe forms of commercial speech relating to real estate sales. In contrast, § 14–26 prohibits any real estate solicitation except for a few enumerated activities and does not require any finding by the County that a particular form of commercial speech might cause blockbusting. Such a blanket prohibition on commercial speech cannot be sustained. This Court accordingly concludes that the statute is not narrowly tailored to serve the asserted governmental interest.

Finally, defendant argues that § 14–26 is constitutional because it furthers the constitutional privacy interests of residents in Baltimore County. This argument is without merit. Defendant has relied on *Curtis v. Thompson,* 840 F.2d 1291 (7th Cir.1988), the facts of which are clearly distinguishable. In that case, the Seventh Circuit held that, when homeowners have given notice that they do not wish to be contacted by solicitors, their privacy rights may outweigh competing First Amendment commercial speech concerns. 840 F.2d at 1304. In so concluding, the Court expressly stated that its holding "prevents neither a buyer nor a seller of real estate from contacting any person who has not notified the particular broker that he wishes to be left undisturbed." *Id.* at 1304. The legislation challenged here prohibits just such contact by a buyer or seller of real estate. On the record here, this Court is satisfied that § 14–26 cannot be found constitutional on grounds that the privacy interests of County residents outweigh the free speech interests involved.[4]

For all these reasons, plaintiffs' motion for summary judgment will be granted, and defendant's motion for summary judgment will be denied. A separate Order will be entered by the Court.

---

**4.** In view of the conclusion reached by the Court in this case, it is not necessary to consider plaintiffs' further argument that § 14–26 is void for vagueness. The Court would note, however, that serious questions have been raised in this case concerning the validity of § 14–26 under *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).