**NEW YORK STATE ASSOCIATION OF REALTORS, INC. and Clifford Hall, Plaintiffs–Appellants,**

v.

**Gail S. SHAFFER, Individually and as Secretary of State of the State of New York, Defendant–Appellee.**

**No. 1276, Docket 93–9160.**

United States Court of Appeals, Second Circuit.

Argued March 22, 1994.

Decided June 23, 1994.

Michael T. Wallender, Albany, NY (Barbara G. Billet, Goldson & Radin, Commack, NY, of counsel), for appellants.

August L. Fietkau, Asst. Atty. Gen., State of NY, New York City (G. Oliver Koppell, Atty. Gen. of the State of NY, Frederic L. Lieberman, Asst. Atty. Gen., State of NY, New York City, of counsel), for appellee.

Before: OAKES, MESKILL and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

◼ This appeal requires us to decide primarily whether a regulation banning the solicitation of residential property owners by real estate brokers and salespersons in designated geographic areas, ostensibly as a means for combating the evil known as "blockbusting," violates the free speech rights of realtors under the First Amendment to the Constitution. In concluding that it did not, the United States District Court for the Eastern District of New York, Spatt, J., declared, *inter alia,* the statute authorizing the creation of so-called nonsolicitation zones or areas, N.Y. Real Prop. Law § 442–h (McKinney 1994) (section 442–h), and two regulations, N.Y. Comp.Codes R. & Regs. tit. 19, § 178 (19 N.Y.C.C.R.R. § 178 or nonsolicitation regulation), establishing and enforcing the specific nonsolicitation zones at issue here, and N.Y. Comp.Codes R. & Regs. tit. 19, § 175.17(a) (19 N.Y.C.C.R.R. § 175.17(a) or antiblockbusting regulation), defining and prohibiting the practice of blockbusting, constitutionally valid both facially and as applied. *See* 833 F.Supp. 165. Since we need not focus on the facial validity of section 442–h to decide this appeal, we confine our inquiry primarily to the narrower issue of whether the nonsolicitation regulation constitutes an impermissible restriction on commercial speech. To that end, we conclude that such a regulation violates the First Amendment rights of realtors in this case. Accordingly, we reverse and remand.

## BACKGROUND

Blockbusting is a practice whereby real estate agents artificially stimulate sales of residential property by making representations to homeowners regarding the migration of a particular racial, ethnic, religious, or social group into the neighborhood. In its most systematic and crudest form, blockbusting entails the "churning" of a local real estate market, a practice in which real estate brokers engage in frenzied solicitation practices that prey upon the racial and ethnic fears of persons residing in transitional

neighborhoods as a means for increasing the volume of residential real estate transactions. While realtors gain the benefit of the commissions generated by the increase in sales, homeowners and communities suffer the detriment of declining property values and neighborhood instability brought on by panic selling, the fanning of racial tensions and promoting of ethnic stereotypes.

Although often difficult to prove, the practice of blockbusting has not gone unnoticed by federal and local governments. Indeed, federal, state, and municipal governments have instituted a variety of legislative initiatives aimed at combating and eliminating it. *See, e.g.,* 42 U.S.C. § 3604(e); N.Y. Exec. Law § 296(3–b); Ill.Rev.Stat. ch. 720, § 590/1 (1994); *see also South–Suburban Hous. Ctr. v. Greater South Suburban Bd. of Realtors,* 935 F.2d 868, 875–76 (7th Cir.1991) (describing the components and purpose of four different municipal ordinances restricting real estate solicitations in an effort to promote stability in communities), *cert. denied,* —— U.S. ——, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992); *Heights Community Congress v. Hilltop Realty,* 774 F.2d 135, 137–38 (6th Cir.1985) (noting city's efforts to promote racial openness and combat heavy real estate solicitations through municipal ordinances), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986); *Greater Baltimore Bd. of Realtors v. Baltimore County,* 752 F.Supp. 193, 195 (D.Md.1990) (discussing county wide ordinances aimed at prohibiting blockbusting and related solicitation activity).

At issue here is one such initiative arising out of New York State's twenty-plus year campaign to combat blockbusting. Accordingly, a brief history of that particular effort is helpful in understanding the context in which we decide this appeal today.

### A. *Regulations Prior to 1989*

In 1969, the New York Legislature outlawed the practice of blockbusting. *See* N.Y. Exec. Law § 296(3–b). The task of enforcing the prohibition fell to the Office of the Secretary of State of New York (Secretary), who, under New York law, is charged with the general regulation of real estate brokers, including licensing and discipline. N.Y. Real Prop. Law §§ 441, 441–c; N.Y. Exec. Law § 91. Pursuant to that regulatory authority, the Secretary promulgated the antiblockbusting regulation defining the parameters of forbidden solicitation activity, 19 N.Y.C.C.R.R. § 175.17(a), the antiblockbusting regulation, and an enforcement provision creating cease and desist orders whereby homeowners residing in blockbusting prone communities could notify the state in writing that they did not want to be solicited by brokers seeking to sell or lease their property, 19 N.Y. Comp.Codes R. & Regs. tit. 19, § 175.17(b) (19 N.Y.C.C.R.R. § 175.17(b) or cease and desist regulation). To implement the cease and desist regulation, the Secretary published the list of those homeowners who requested that realtors refrain from soliciting them and the realtors were then prohibited from contacting those persons. The real estate industry, however, was free to solicit homeowners who did not request to be placed on the cease and desist regulation list.

Perceiving blockbusting to be serious in certain communities, the Secretary began in 1971 to promulgate administrative regulations restricting *outright* most forms of solicitation by realtors in specified geographic areas (nonsolicitation orders). These nonsolicitation orders, which were not unlike the restriction at issue on this appeal, were challenged in several state court proceedings with mixed results.

In *Hawley v. Cuomo,* 46 N.Y.2d 990, 389 N.E.2d 827, 416 N.Y.S.2d 232 (1979), disgruntled realtors challenged a broad nonsolicitation order covering certain neighborhoods located in an area encompassing Kings and Queens Counties. The Court of Appeals, citing the Secretary's failure to show that "prohibited racial blockbusting tactics were prevalent" or "even ... that such practices were imminent" in the area encompassed by an order "so broad in geographic scope[,]" struck down the regulation as "arbitrary and capricious" and "an abuse of [administrative] discretion" under New York law. 46 N.Y.2d at 991–92, 389 N.E.2d at 828, 416 N.Y.S.2d at 233.

Eight years later, the Appellate Division upheld the suspension of a realtor's license

for violating a nonsolicitation order covering designated areas in Queens County. *Russo v. Shaffer*, 131 A.D.2d 853, 517 N.Y.S.2d 212 (2d Dep't 1987). The Court found that "the non-solicitation order did not violate the petitioners' right to commercial free speech" because the governmental interest in preventing blockbusting was substantial, the interest was directly advanced by the nonsolicitation order, and the goal of combating blockbusting "could not have been as well served by an order less restrictive of commercial speech." 131 A.D.2d at 853–54, 517 N.Y.S.2d at 213. The Second Department also concluded that the creation and enforcement of the nonsolicitation order was "a valid exercise of the Secretary['s] ... authority to issue appropriate regulations deemed necessary to implement the legislative intent behind" New York's statutory prohibition on blockbusting. 131 A.D.2d at 854, 517 N.Y.S.2d at 213.

In 1989, however, the New York Court of Appeals held that the promulgation of a nonsolicitation order that banned lawful as well as unlawful forms of real estate solicitation exceeded the authority given the Secretary by the New York Legislature to enforce the prohibition on blockbusting. *Campagna v. Shaffer*, 73 N.Y.2d 237, 243, 536 N.E.2d 368, 370–71, 538 N.Y.S.2d 933, 935–36 (1989). Noting that the nonsolicitation order at issue "leaps well beyond" the statutory prohibition on blockbusting, the court reasoned that, by extending the reach of the nonsolicitation orders to nonblockbusting communications, the Secretary "has gone beyond administering the written law and has, under color of regulatory authority, actually rewritten and extended the law." *Id.* It concluded that if the only way to prevent blockbusting was to ban all broker solicitations, the use of such a remedy was "a policy choice for the Legislature, not for the [Secretary]" and that, if the Legislature took such action, the measure, nonetheless, "would ... have to pass constitutional muster." 73 N.Y.2d at 244, 536 N.E.2d at 371, 538 N.Y.S.2d at 936.

### B. *Section 442–h*

In response to *Campagna*, the New York Legislature enacted section 442–h. The provision authorized the Secretary to employ several different measures to combat blockbusting, including the promulgation of broad nonsolicitation orders through the establishment and enforcement of designated nonsolicitation areas or zones where appropriate. The statute also gave the Secretary a less restrictive enforcement option, the use of cease and desist orders.

More importantly, section 442–h did not on its face mandate the use of any particular measure or measures. Rather, it delegated that authority to the Secretary, who was free to decide what, if any, measures were required and to employ such measures pursuant to the general guidelines set forth in the statute. Those statutory guidelines, moreover, provided that the use of nonsolicitation orders was an option that the Secretary *may* resort to after she determines, following public hearings and investigations, that such a measure is necessary to combat the impact of blockbusting on residential housing markets in designated neighborhoods. *See* N.Y. Real Prop. Law § 442–h(2)(a).

### C. *Promulgation of the Nonsolicitation Orders at Issue*

In late 1989, pursuant to this new authority, the Secretary published a proposed regulation establishing nonsolicitation areas in the following communities: in Bronx County, Community Districts 9, 10, 11, and 12; in Kings County, Community Districts 4, 5, 9, 12, 14, 15, 17, and 18; in Queens County, Community Districts 3, 4, 5, 6, 8, 9, 10, 12, 13, and 14; and in certain areas located in southern and western Nassau County. Under the proposed regulation, realtors were prohibited from engaging "in any form of solicitation where the purpose of such solicitation is, directly or indirectly, to obtain a listing of residential property for sale and where such solicitation is directed at or toward a homeowner ... within a designated nonsolicitation area." Exempted, however, was solicitation through the use of advertisements placed in certain commercial newspapers of general circulation.

In accordance with the statute, the Secretary then conducted a series of public hearings in each of the four counties covered by the regulation. Testimony and evidence

were taken from residents, public officials, civic leaders, and the real estate industry. After analyzing the data, the Secretary's staff recommended that the nonsolicitation areas be reduced in size to cover only certain areas in the four counties. The Secretary accepted the recommendations reducing the size of the nonsolicitation areas and in accordance therewith, promulgated the formal regulation at issue here: the nonsolicitation regulation establishing and enforcing nonsolicitation zones for the areas designated above.

## D. *District Court Proceedings*

On May 28, 1991, plaintiffs-appellants, the New York State Association of Realtors, Inc., a trade association of licensed real estate brokers and local boards of realtors, and Clifford Hall, an individual, licensed real estate broker in New York (collectively "Realtors"), filed this action against the defendant-appellee, Gail S. Shaffer, individually and as Secretary of State of the State of New York, in the United States District Court for the Eastern District of New York. Specifically, the Realtors sought a declaratory judgment invalidating section 442–h and the nonsolicitation regulation on their faces and invalidating the antiblockbusting regulation, 19 N.Y.C.C.R.R. § 175.17(a), as applied to truthful, legal solicitations. In their complaint, the Realtors alleged that the statute and regulations violated (1) the First Amendment right to free speech, (2) the Privileges and Immunities Clause in Article IV, section 2 of the Constitution, (3) the Equal Protection Clause of the Fourteenth Amendment, (4) the Fair Housing Act, 42 U.S.C. § 3604(e), (5) 42 U.S.C. §§ 1981 and 1982, and (6) 42 U.S.C. § 1983. Although the complaint did not seek monetary damages under 42 U.S.C. § 1983, moreover, it contained, nonetheless, a request for attorney's fees pursuant to 42 U.S.C. § 1988.

Following discovery, the parties filed cross-motions for summary judgment. After reviewing the submissions and conducting oral argument, the district court issued a memorandum of decision and order, denying in its entirety the Realtors' motion for summary judgment and granting summary judgment for the Secretary. Specifically, the district court found that the statute and regulations were valid governmental restrictions on commercial speech under the test set forth by the United States Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). *See* 833 F.Supp. at 181, 186. It found, moreover, that the remaining claims of the Realtors were meritless. *Id.* at 186–89. On October 7, 1993, the district court entered final judgment in the matter and dismissed the action. This appeal followed.

## DISCUSSION

On appeal, in addition to the First Amendment issue, the Realtors resurrect the Equal Protection, Fair Housing, and 42 U.S.C. §§ 1981 and 1982 claims previously rejected by the district court. We agree, however, with the district court's analysis and conclusion that those resurrected claims lack merit. *See* 833 F.Supp. at 187–88. In any event, our conclusion that the nonsolicitation regulation is an impermissible restriction on commercial speech under the First Amendment is dispositive of the dispute underlying this appeal. Accordingly, we find it unnecessary to address the additional claims and confine our review to the district court's conclusion that the Secretary's ban on real estate solicitations does not violate the First Amendment.

## I. *Standard of Review*

We review a district court's grant of summary judgment *de novo,* construing the record in the light most favorable to the nonmoving party. *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 14 (2d Cir.1993). The scope of our review, moreover, does not change where, as here, summary judgment was granted to one party and denied to the other in the procedural context of cross-motions. *See generally* 10A Charles A. Wright *et al., Federal Practice and Procedure* § 2720, at 16–35 (2d ed. 1983). Indeed, " '[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment.' " *Id.* at 18–19 (quoting *Rains v. Cascade Indus.,* 402 F.2d 241, 245 (3d Cir.1968)).

## II. *First Amendment*

As a preliminary matter, we note that the Realtors challenge not merely the two regulations promulgated by the Secretary but also the facial validity of section 442–h(2)(a), the statutory provision authorizing the non-solicitation regulation. We are cognizant, however, that "a holding of facial invalidity expresses the conclusion that the statute *could never be applied* in a valid manner." *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 797–98, 104 S.Ct. 2118, 2124–25, 80 L.Ed.2d 772 (1984) (emphasis added); *see also New York State Club Ass'n v. City of New York,* 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988). Despite the formal assertion of a facial challenge to section 442–h(2)(a), we do not understand the Realtors to argue that the statute *could never be applied* in a valid manner, *i.e.,* that a ban on real estate solicitations could *never* be justified under section 442–h(2)(a). Rather, we construe the crux of the Realtors' claim to be that the Secretary has failed to justify the establishment and enforcement of nonsolicitation areas involved in this case.

Section 442–h, moreover, is readily distinguishable from other nonsolicitation statutes that *on their face* mandate the type of " '[b]road prophylactic rules' " that are inherently suspect " 'in the area of free expression.' " *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1803, 123 L.Ed.2d 543 (1993) (quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963)). Unlike statutes found to be facially invalid restrictions on commercial speech, statutes that on their face impose broad comprehensive bans on solicitation, *see, e.g., Edenfield,* —— U.S. at ——, 113 S.Ct. at 1803 (striking down a Florida regulation imposing a comprehensive, statewide ban on solicitation by public accountants); *City of Cincinnati v. Discovery Network,* —— U.S. ——, ——, 113 S.Ct. 1505, 1517, 123 L.Ed.2d 99 (1993) (striking down ordinance imposing citywide ban on newsracks carrying commercial handbills); *Bates v. State Bar,* 433 U.S. 350, 383, 97 S.Ct. 2691, 2708–09, 53 L.Ed.2d 810 (1977) ("holding that advertising by attorneys may not be subjected to blanket suppression" and striking down state bar disciplinary rule restraining attorney advertising); *Linmark Assocs. v. Township of Willingboro,* 431 U.S. 85, 97, 97 S.Ct. 1614, 1620–21, 52 L.Ed.2d 155 (1977) (striking down ordinance banning "For Sale" signs on residential property); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 770, 96 S.Ct. 1817, 1829–30, 48 L.Ed.2d 346 (1976) (holding that state statute banning the advertisement or dissemination of prescription drug price information by licensed pharmacists violates the First Amendment); *see also Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 199 (striking down county regulation imposing an outright ban on most real estate solicitation within the county), section 442–h(2)(a) merely authorizes, but does not require, the Secretary to impose a solicitation ban after she determines through public hearings and investigation that circumstances and conditions warrant such action. In addition to the option of a ban, section 442–h gives the Secretary a less restrictive option; the use of cease and desist orders, a measure that the Realtors concede is a viable, but less restrictive means of combating blockbusting. Thus, section 442–h(2)(a) is not a *per se* ban on solicitation but part of a broader enforcement scheme that gives the Secretary the authority to investigate the scope of the blockbusting problem, if any, and then select the appropriate option best suited to its remedy.

Thus, notwithstanding their formal assertion of a facial challenge to section 442–h, we believe that the Realtors' position on this appeal, when viewed in light of the stringent requirements governing facial challenges to statutes and the record in this case, is in reality a facial challenge to the specific nonsolicitation regulation promulgated under the statute, rather than a facial attack on the statute itself. Accordingly, we confine our First Amendment inquiry to the narrow issue of whether the challenged regulations promulgated by the Secretary pursuant to statutory authority, particularly the nonsolicitation regulation, are valid governmental restrictions on speech.

### A. *The Nonsolicitation Regulation*

The Realtors seek primarily to invalidate on its face the nonsolicitation regulation pro-

mulgated by the Secretary that establishes and enforces a comprehensive ban on solicitation by realtors in designated areas. The nonsolicitation regulation issued by the Secretary pursuant to her authority under section 442–h is a multiple provision scheme that defines the general parameters, prohibited conduct, and applicable geographic areas of the ban on real estate solicitation. *See generally* 19 N.Y.C.C.R.R. § 178. Specifically, it defines a nonsolicitation order as a "directive" to all real estate brokers and salespersons to "refrain from soliciting listings for the sale of residential property within a designated geographic area." 19 N.Y.C.C.R.R. § 178.1. Prohibited are "any and all types of solicitation directed at or toward homeowners in the designated geographic area," including but not limited to "letters, postcards, telephone calls, door-to-door calls, handbills, and postings in public areas." *Id.; see also* 19 N.Y.C.C.R.R. § 178.5. The regulation, however, does permit advertisements that are published in newspapers of general circulation with a readership "throughout a substantial portion of the metropolitan New York City area," published not less than once a week, and not distributed free of charge. 19 N.Y.C.C.R.R. § 178.5. Finally, by its terms the nonsolicitation regulation makes the nonsolicitation order applicable in specifically defined geographic areas located in: Bronx County, 19 N.Y.C.C.R.R. § 178.6; Kings County, 19 N.Y.C.C.R.R. § 178.7; Queens County, 19 N.Y.C.C.R.R. § 178.8; and Nassau County, 19 N.Y.C.C.R.R. § 178.9 (collectively the "nonsolicitation zones" or "nonsolicitation areas").

### B. *Level of First Amendment Protection*

We first consider the level of scrutiny to be applied to the provisions challenged by the Realtors. To that end, we note that "the degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or noncommercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65,

103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983). While the Supreme Court long ago extended the First Amendment to commercial speech, *see Bigelow v. Virginia*, 421 U.S. 809, 818, 95 S.Ct. 2222, 2230–31, 44 L.Ed.2d 600 (1975), it recognized, nonetheless, "'the "commonsense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.'" *Bolger*, 463 U.S. at 64, 103 S.Ct. at 2879 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978)). Because the Supreme Court instructs us that "the Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression," we "must first determine the proper classification of the [speech] at issue here." *Id.* at 64–65, 103 S.Ct. at 2879.

The "core notion" of commercial speech is that of "'speech which does "no more than propose a commercial transaction."'" *Id.* at 66, 103 S.Ct. at 2880 (citations omitted). However, the mere fact that the speech at issue "has an economic motivation" or is "conceded to be advertisement[ ]" is not by itself sufficient to convert that speech into "commercial" speech. *Id.* at 66–67, 103 S.Ct. at 2880. On the other hand, "advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Id.* at 68, 103 S.Ct. at 2881 (quoting *Central Hudson*, 447 U.S. at 563 n. 5, 100 S.Ct. at 2349–50 n. 5). Finally, in considering these different elements, we are mindful of the Supreme Court's general edict that where the communications at issue "are made in the context of commercial transactions" the speech is not accorded a higher level of constitutional protection under the First Amendment. *Id.*

█ Applying these principles, we agree with the district court that, at its core, the speech restricted by the nonsolicitation regulation is properly classified as commercial, at least for the purpose of this litigation.[1] Oth-

---

1. We note that, in their brief and again at oral argument, the Realtors contended that certain kinds of speech activity restricted by the ban on solicitation in this case constitute pure rather

than commercial speech and that such speech is entitled to greater protection under the First Amendment. At the same time, the Realtors argued both at oral argument and throughout

er courts that have considered similar restrictions have concluded that the solicitation of homeowners by realtors seeking the right to list and sell residential real estate "is primarily aimed at proposing a commercial transaction, and should thus be classified as 'commercial speech.'" *Curtis v. Thompson,* 840 F.2d 1291, 1297 (7th Cir.1988); *see also Linmark Assocs.,* 431 U.S. at 91, 97, 97 S.Ct. at 1617, 1620–21 (analyzing municipal ordinance banning the use of "For Sale" signs on residential property under cases involving restrictions on "commercial speech"); *South–Suburban Hous. Ctr.,* 935 F.2d at 888–89 (following *Curtis* and applying commercial speech analysis in evaluating municipal ordinances precluding realtors from mailing solicitations to homeowners); *Hilltop Realty,* 774 F.2d at 143 (evaluating district court's granting of relief under 42 U.S.C. § 3604(e) as a restriction on commercial speech); *Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 197 (evaluating nonsolicitation ban as a restriction on commercial speech). Accordingly, we are satisfied, as the parties appear to be, that the speech at issue here is primarily "commercial" and that the challenged regulations are best scrutinized under the four part test delineated by the Supreme Court in *Central Hudson* for determining the validity of governmental restrictions on commercial speech under the First Amendment. *See* 447 U.S. at 566, 100 S.Ct. at 2351.

## C. *Commercial Speech Analysis*

In determining whether the nonsolicitation regulation is a valid restriction on commercial speech under the *Central Hudson* test, we look first to "whether the expression is protected by the First Amendment[,]" *i.e.,* we look to see if, at a minimum, the commercial speech at issue "concern[s] lawful activity and [is] not ... misleading." *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351. Next, we inquire "whether the asserted governmental interest is substantial." *Id.* If we are satisfied that the answers to both these inquiries are affirmative, we turn next to the third and fourth prongs: "whether the regulation directly advances the governmental in-

terest asserted," and whether the regulation "is not more extensive than is necessary to serve that interest." *Id.*

Here, the district court found, and the parties agree, that the first two prongs of the test are satisfied. *See* 833 F.Supp. at 181–82. With respect to the first, the Secretary does not dispute that "the ability of real estate brokers to solicit homeowners constitutes lawful activity and that housing solicitations are not *per se* misleading." *Id.* at 181; *see also Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 197. As to the second, the Realtors concede, in their brief to this Court, that the government has a substantial interest in combating blockbusting, "if, as and when it occurs." As the district court and other courts have noted, the governmental interest in the promotion of stable, racially integrated communities through the elimination of the pernicious practice of blockbusting is a "vital goal." *See Linmark Assocs.,* 431 U.S. at 94–95, 97 S.Ct. at 1619; *Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 197–98.

Not surprisingly, therefore, the parties focus their arguments on the application of the third and fourth prongs of *Central Hudson:* whether the regulation at issue "directly advances the governmental interest asserted," the promotion of stable and racially integrated communities through the elimination of blockbusting, "and whether it is not more extensive than is necessary to serve that interest." *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2690. Accordingly, we proceed to consider whether the Secretary's ban on real estate solicitations in this case survives scrutiny under the third and fourth prongs of *Central Hudson.*

## D. *Application*

The crux of the Realtors' complaint with the nonsolicitation regulation is its fundamental failure to distinguish between truthful, nonmisleading solicitation and blockbusting. The Realtors, moreover, insist that the sweeping scope of the regulation arbitrarily transforms legitimate solicitation activity into

their submissions that the regulations were invalid primarily because they fail the third and fourth prongs of *Central Hudson,* a level of scruti-

ny applicable to restrictions on commercial, rather than pure speech.

blockbusting tactics presumptively motivated by the industry's lust for financial gain at the expense of neighborhood stability.

In bringing their claim within the rubric of *Central Hudson,* the Realtors raise two contentions. First, they argue that the Secretary has failed in her burden to produce any direct evidence of systematic blockbusting in the last ten years. The Realtors insist that, in the absence of such evidence, the Secretary cannot demonstrate how the establishment and enforcement of nonsolicitation zones directly advance New York's interest in eliminating blockbusting. Second, the Realtors argue that even if the record contains some anecdotal evidence of isolated instances of blockbusting by individual realtors, the record is devoid of the type of systematic blockbusting that might justify the imposition of a comprehensive ban on real estate solicitation. The Realtors insist that, at best, the record justifies the use of cease and desist orders, a less restrictive measure that is an equally effective means for protecting the targeted communities from blockbusting. The Realtors conclude, therefore, that the nonsolicitation regulation violates the commercial free speech rights of realtors because it neither directly advances the state's substantial interest in promoting stable communities through the elimination of blockbusting nor provides the Secretary with a reasonably tailored means for eliminating that evil. We agree, at least with respect to the Realtors' latter contention, that the nonsolicitation regulation is not a reasonably tailored restriction for achieving the governmental interest asserted in this case.

In determining whether the nonsolicitation regulation satisfies the *Central Hudson* test, we are mindful that "laws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a *reasonable manner* to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield,* —— U.S. at ——, 113 S.Ct. at 1798 (emphasis added). The fact that the Secretary's asserted interests in eliminating blockbusting "are substantial in the abstract does not mean, however, that [her] blanket prohibition on solicitation serves them." *Id.* ——, 113 S.Ct.

at 1800. Rather, to justify a content based restriction on commercial speech, the First Amendment "requires that a regulation impinging upon commercial expression 'directly advance the state interest involved.'" *Id.* (quoting *Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2689). A regulation will not pass muster, therefore, "'if it provides only ineffective or remote support for the government's purpose.'" *Id.* (quoting *Central Hudson,* 447 U.S. at 564, 100 S.Ct. at 2689).

To that end, "'[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Id.* (quoting *Bolger,* 463 U.S. at 71 n. 20, 103 S.Ct. at 2882 n. 20). The party seeking to uphold the restriction, moreover, cannot satisfy its burden "by mere speculation or conjecture" but "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* Accordingly, the failure of the Secretary to provide direct and concrete evidence that the evil that the restriction purportedly aims to eliminate does, in fact, exist will doom the nonsolicitation regulation under *Central Hudson. See, e.g., id.; Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 199 (court's finding that blockbusting no longer exists is dispositive that the regulation of realtors' advertising activities "cannot further the professed interest of combatting this evil").

The record before us contains primarily three types of evidence offered by the Secretary to establish the existence of blockbusting. First, she provides anecdotal testimony given at public hearings, often from second hand sources about the conduct of individual realtors. In reviewing that testimony, we believe that some of it supports, at least implicitly, the view that certain, individual realtors have engaged in conduct that could reasonably be characterized as blockbusting. Other parts of the testimony, however, merely demonstrate the annoyance of certain homeowners with being solicited in general. While such annoyance is understandable, it does not, by itself, equate with blockbusting.

Second, the Secretary submitted examples of written solicitations. In its opinion, the district court parsed out five that it concluded "implicitly show blockbusting." 833

F.Supp. at 178. Of those five, however, only the first, which states in pertinent part, "[c]ommunities are always changing in Brooklyn [and] Mill Basin homeowners like yourself are aware that these changes may directly affect property values," could be interpreted as blockbusting. By contrast, the remaining four solicitations make no mention on their face or by implication of the need to sell because of changing racial or social conditions in the neighborhood. For example, one states, "[w]e ... recently learned that you own property ... [i]n case you are willing to sell it, please contact us at your earliest convenience." *Id.* Another merely contends:

> [t]o date, nothing has been so grossly over-emphasized as how weak our local real estate market is!!! It is time to stop and ask, is it as terrible as everyone says it is!?! Yes, we have seen a stabilization in appreciation! Yes, there may be too many homes available than are needed! But, when the conditions are right—houses will sell!!!.... If you're thinking of selling, call.... That is my message for the new year, I hope its [sic] clear.

*Id.* Still another informs the homeowner that the agent is "working with several buyers who are interested in buying property in this neighborhood ... [so] [i]f [you] or anyone you know is interested in selling, please be kind enough to contact me." *Id.* In short, these solicitations are straightforward inquiries into whether the homeowner might be interested in listing the property for sale.

Third, the Secretary compiled reports for each nonsolicitation area summarizing the number of reported complaints of "heavy improper solicitations" received and petitions filed by residents seeking protection from solicitation through cease and desist orders. The reports indicated that 135 complaints were received by the Secretary from residents in Community District 9 in Queens County, while the majority of community districts covered by the regulation registered less than fifty complaints per district. Additionally, 3,400 petitions for relief from solicitation were received in one district in Queens County, while anywhere from 200 to 3,000 requests were received in other districts.

This data, however, gives us no indication of whether the complaints and petitions for relief were driven by the use of improper blockbusting tactics or by residents' annoyance with otherwise proper solicitations by realtors.

In evaluating this record, moreover, we cannot ignore what it does not contain. For example, the Secretary produced no evidence that she has adjudicated a single case of blockbusting against a licensed real estate broker, as blockbusting is defined under New York law, *see* 19 N.Y.C.C.R.R. § 175.17. She failed to initiate a single charge against a licensed real estate agent arising out of the testimony at the public hearings. Indeed, the Secretary concedes that no follow up investigations were made to determine the reasonableness of the allegations made by homeowners at those hearings.

The record indicates, moreover, that the Secretary's office has adjudicated only four complaints of racial steering in the last ten years. She provides us with no statistical comparison of real estate activity in areas initially proposed and areas ultimately designated as nonsolicitation zones and offers no empirical evidence that real estate values have declined as a result of real estate practices in the nonsolicitation areas. Indeed, she appears to argue that, because empirical evidence of blockbusting is itself difficult, if not impossible, to obtain, the nonsolicitation regulation can be justified exclusively on the premise that persistent solicitation by realtors, regardless of its content, in "transitional neighborhoods" is sufficient to establish *a fortiori* the existence of widespread blockbusting.

Admittedly, blockbusting is a difficult practice to prove. The practice often occurs through the use of subtle and implied, rather than direct and express, representations by realtors to homeowners. Moreover, this is not a record in which the Secretary failed to provide *any* evidence of blockbusting. *Cf. Greater Baltimore Bd. of Realtors,* 752 F.Supp. at 199. Rather, the public hearings produced some evidence of the existence of a tangible harm that the Secretary is justified in trying to eliminate. *Cf. Edenfield,* —— U.S. at ——, 113 S.Ct. at 1800 (noting that

the record contains no anecdotal evidence that supports the imposition of the restriction at issue). Were this simply a case of whether the Secretary had established the existence of *any* blockbusting in the nonsolicitation areas, therefore, we would be less convinced that the nonsolicitation regulation fails under *Central Hudson.*

Unfortunately for the Secretary, however, *Central Hudson* requires us to evaluate not merely the existence of a particular type of harm but the scope of the restriction in light of the *degree* of the harm. Put another way:

> What [the] decisions require is a " 'fit' between the [government's] ends and the means chosen to accomplish those ends"— a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is *"in proportion to the interest served* [;]" that employs not necessarily the least restrictive means, but ... a means narrowly tailored to achieve the desired objective.

*Board of Trustees of SUNY v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989) (citations omitted) (emphasis added); *see also Discovery Network,* —— U.S. at ——, 113 S.Ct. at 1509 (governmental entity seeking to impose restriction has burden of establishing a reasonable fit between legitimate interests and means chosen to serve those interests). The need that the fit be "reasonable" as opposed to "necessarily perfect," however, does not render the standard "overly permissive." *Id.* Indeed, what constitutes a reasonable fit "is far different ... from the 'rational basis' test used for Fourteenth Amendment equal protection analysis." *Id.* Instead, the First Amendment "require[s] the government goal to be substantial, and the cost to be carefully calculated." *Id.* To prevail, therefore, the Secretary "must affirmatively establish the reasonable fit" required under *Central Hudson. Id.*

A review of the record convinces us that the Secretary has not affirmatively established such a fit. Particularly troubling in this case is the Secretary's failure to determine empiracally whether less restrictive measures, such as the implementation of cease and desist orders, would provide an alternative means for effectively combating the level of blockbusting evidenced by the record in this case. The Secretary, moreover, offers no evidence of any kind that this type of narrower, resident activated measure, a measure that was in effect prior to the issuance of the solicitation ban, is an ineffective means for combating the individual incidents of blockbusting alleged by residents at the public hearings. In the absence of such evidence, we find it difficult to accept the Secretary's position that a community wide, comprehensive ban on all real estate solicitations, regardless of the otherwise proper content of those solicitations, as opposed to the issuance and enforcement of the cease and desist orders on an individualized basis, is a reasonably tailored means for eliminating the harm of blockbusting as portrayed by this record. Finally, the regulation's exemption of real estate advertisements in newspapers of general circulation fails to offer realtors the type of cost effective alternative that might arguably bring this regulation within the requirements of *Central Hudson.* Accordingly, we conclude that the nonsolicitation regulation is an impermissible restriction on commercial speech.

We caution, however, that our decision today is a narrow one, limited solely to the record before us. As should be clear from the discussion above, we do not reach the question of whether under certain facts and circumstances and under a different record, the Secretary might be able to justify some type of nonsolicitation regulation pursuant to section 442–h. *See Discovery Network,* —— U.S. at ——, 113 S.Ct. at 1516. Accordingly, we hold only that the nonsolicitation regulation, 19 N.Y.C.C.R.R. § 178, violates the First Amendment rights of the Realtors in this case.

**E.**  *19 N.Y.C.C.R.R. § 175.17(a)*

█ In addition to attacking the nonsolicitation regulation, the Realtors challenge the antiblockbusting regulation, 19 N.Y.C.C.R.R. § 175.17(a), also promulgated by the Secretary. Unlike the nonsolicitation regulation, however, the Realtors seek to invalidate the antiblockbusting regulation only as it applies to their truthful, legal solicitations.

Section 175.17(a) prohibits a licensed real estate broker from "making any representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion or national origin." The Realtors, however, do not take issue with the regulation *per se.* Indeed, to the contrary, they endorse it. Nonetheless, they ask us to declare the regulation unconstitutional as applied to truthful and nonmisleading communications from realtors. We decline.

As the district court correctly found, the plain language of the antiblockbusting regulation in no way touches upon truthful or nonmisleading speech that the Realtors seek to protect. Since only those communications that seek to induce a sale by preying on the racial and ethnic fears of homeowners is prohibited, we fail to see how the antiblockbusting regulation restricts in any way the legitimate, nonmisleading communications of the residential real estate industry in New York. We agree, therefore, with the district court that any further inquiry into this issue is "redundant and unnecessary." 833 F.Supp. at 186.

### III. *42 U.S.C. §§ 1983 and 1988*

As a final matter, the sixth count of the Realtors' complaint alleges that they were deprived of a constitutional right under color of state law in violation of 42 U.S.C. § 1983 and, thus, are entitled to attorney's fees pursuant to 42 U.S.C. § 1988. Because the district court found that the Secretary's ban on solicitation passed constitutional muster, it rejected the Realtors' sections 1983 and 1988 claim for attorney's fees. *See* 833 F.Supp. at 188–89. In light of our holding that the nonsolicitation regulation violates the First Amendment rights of the Realtors, however, we are compelled to remand the claim for attorney's fees pursuant to sections 1983 and 1988 for further proceedings.

### CONCLUSION

For the reasons stated, the nonsolicitation regulation, 19 N.Y.C.C.R.R. § 178, promulgated by the Secretary pursuant to N.Y. Real Prop. Law § 442–h, is an invalid restriction on the First Amendment rights of real estate brokers and salespersons in this case. Accordingly, we reverse the district court's denial of summary judgment for the Realtors and its grant of summary judgment for the Secretary and remand the matter for further proceedings consistent with this opinion.

ALTIMARI, Circuit Judge, dissenting:

Because I disagree with the majority's conclusion that the nonsolicitation regulation at issue is an impermissible restriction on commercial speech under the First Amendment, I respectfully dissent.

The majority's conclusion is essentially based on its belief that the evidence presented by the Secretary was insufficient to establish a constitutional fit between the government's interest in preventing blockbusting, and the means chosen to further that interest. In arriving at this conclusion, the majority differs from the district court in the weight it accords the Secretary's evidence of blockbusting. I feel this difference is due to the majority's failure to truly credit the difficulties of finding direct evidence of this invidious practice. For this reason, and for the reasons so clearly and eloquently stated by Judge Spatt, I would affirm the judgment of the district court.