NEW YORK STATE ASSOCIATION OF REALTORS, INC. and Clifford Hall, Plaintiffs,

v.

Gail S. SHAFFER, Individually and as Secretary of State of the State of New York, Defendant.

No. CV 91–1897.

United States District Court, E.D. New York.

Sept. 9, 1995.

The Law Offices Michael T. Wallender by Michael T. Wallender, Barbara G. Billet, Albany, NY, for plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York by August L. Fietkau, Assistant Attorney General, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiffs New York State Association of Realtors, Inc. and Clifford Hall moves the Court for an order granting them attorneys' fees and costs, together with post-judgment interest pursuant to 42 U.S.C. §§ 1983 and 1988.

### I. BACKGROUND

The plaintiffs commenced this action on May 28, 1991, seeking injunctive relief as well as a judgment declaring that several New York State laws pertaining to restraints on certain activities of realtors are unconstitutional and violative of free speech rights secured by the First Amendment. Specifically, the plaintiffs challenged the constitutionality of Chapter 696 of the New York State Laws of 1989, codified at N.Y.Real Prop.Law § 442–h, and two regulations promulgated thereunder at 19 N.Y.C.R.R. § 175.17(a), regarding "antiblockbusting," and 19 N.Y.C.R.R. Part 178, regarding "nonsolicitation orders." These regulations restrict real estate brokers and salespersons from initiating certain communications with residential property owners.

By Order dated September 30, 1993, this Court denied a motion for summary judgment by the plaintiffs and granted the defendant's motion for summary judgment dismissing the complaint. The United States Court of Appeals for the Second Circuit reversed this Court's Order in an Opinion dated June 23, 1994. *See New York State Association of Realtors, Inc. v. Shaffer,* 27 F.3d 834 (2d Cir.1994). In its opinion the Second

Circuit remanded the case for further proceedings regarding the plaintiffs' claim for attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988. On November 14, 1994, the United States Supreme Court denied the defendant's petition for a writ of certiorari.

## A. The Plaintiffs' Fee Application

The plaintiffs seek attorneys' fees in the amount of $77,510.00 and costs and disbursements in the amount of $3,686.27, together with post judgment interest. The plaintiffs' fee application represents compensation to its attorneys, the Law Offices of Michael T. Wallender, for a total of 399.1 attorney hours and 10.5 paralegal hours expended in litigating this case. The fee application encompasses the three and one half year period from May, 1991 until November, 1994. The litigation in this case consisted of the following phases: (1) commencement of the action in May, 1991 and discovery until February, 1993, (2) motions by both parties for summary judgment submitted in February, 1993 and argued before this Court on April 2, 1993; (3) appeal by the plaintiffs from this Court's September 30, 1993 Order denying their motion for summary judgment and granting the defendant's motion for summary judgment dismissing the complaint; (4) reversal by the Second Circuit on June 24, 1993 and remand for determination of the fee plaintiff's application; and (5) petition by the defendant for a writ of certiorari, which was denied on November 14, 1994. The plaintiffs note that their fee application does not include (1) charges for travel time, (2) dual billing for conferences between attorneys within the firm representing the plaintiffs, (3) time expended on legal theories other than the First Amendment claim on which the plaintiffs prevailed, and (4) hours expended by plaintiffs' local counsel Howard G. Goldson, a specialist in real estate law who spent approximately 30 hours on the case.

## B. The Defendant's Objections

The defendants argue that the fees sought by the plaintiffs should be reduced by fifty per cent in light of the fact that they did not prevail on all of the claims asserted in the action. Specifically, the defendant contends that the plaintiffs are not the prevailing party with respect to First Amendment challenges to New York Real Property Law § 442–h and 19 NYCRR § 175.17(a), as the Second Circuit did not reverse this Court's determinations that Section 442–h is facially constitutional and that 19 NYCRR § 175.17 did not interfere with the plaintiffs' First Amendment rights. The defendant notes that the Second Circuit reversed this Court's decision only to the extent of holding that 19 NYCRR § 178, promulgated under NYRPL 442–h to establish nonsolicitation areas in four New York counties, was violative of the plaintiffs' First Amendment rights. The Second Circuit stated,

> We caution, however, that our decision today is a narrow one, limited solely to the record before us. As should be clear from the discussion above, we do not reach the question of whether under certain facts and circumstances and under a different record, the Secretary might be able to justify some type of nonsolicitation regulation pursuant to section 442–h.

*New York State Association of Realtors,* 27 F.3d at 844. The defendant also asserts that the plaintiffs should not be granted fees for time expended in preparation of legal theories other than the successful First Amendment claim. With regard to this subject, the Second Circuit stated,

> On appeal, in addition to the First Amendment issue, the Realtors resurrect the Equal Protection, Fair Housing, and 42 U.S.C. §§ 1981 and 1982 claims previously rejected by the district court. We agree, however, with the district court's analysis and conclusion that those resurrected claims lack merit. *See* 833 F.Supp. at 187–88. *In any event, our conclusion that the nonsolicitation regulation is an impermissible restriction on commercial speech under the First Amendment is dispositive of the dispute underlying this appeal.* Accordingly, we find it unnecessary to address the additional claims and confine our review to the district court's conclusion that the Secretary's ban on real estate

solicitations does not violate the First Amendment.

*Id.* at 838 (emphasis supplied).

Finally, the defendant points out that this action sought a declaratory judgment as well as an order enjoining the Secretary of State from taking future action pursuant to Section 442–h. The latter relief was not granted.

The plaintiffs reply that their prevailing party status rests on their success in achieving what they characterize as their "lead issue, the First Amendment challenge to the nonsolicitation orders." They note that they have identified 12.8 hours as time spent on theories other than First Amendment and deducted that number of hours from their application.

With regard to the fact that only one of the challenged regulations was invalidated, the plaintiffs state that their efforts concerning both 19 N.Y.C.R.R. § 178 and 19 N.Y.C.R.R. § 175.17 involved one set of facts, one legal theory and one body of legal authority. Based on this, the plaintiffs assert that a fifty per cent reduction is unwarranted.

The plaintiffs also note that their request for injunctive relief represented a minimal part of the case in chief. Specifically, they note that only two paragraphs of their summary judgment memo of law and one page of their appellate brief was devoted to the matter of an injunction. It is the plaintiffs' position that their failure to succeed in gaining injunctive relief is insignificant and should not operate to reduce the award of attorneys fees.

## II. DISCUSSION

### A. The Degree of Success Attained

■ In calculating an award of reasonable attorneys' fees in a civil case, the District Court should focus "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.... The most critical factor is the degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983). Further, "[h]ours spent on claims unrelated to those forming the basis of the claim giving rise to the fee award must be excluded unless the claims 'involve a common core of facts or will be based on related legal theories.'" *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 749 F.2d 1000, 1004 (2d Cir. 1984) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940).

■ The plaintiffs are not entitled to recover attorneys' fees for their unsuccessful claims. "Work that is based on different facts and legal theories than a successful one may not be included in the fee award." *United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–49).

■ As discussed above, the defendant urges the Court to reduce the plaintiffs fee application by fifty per cent because they did not prevail on all of their claims. The Court notes that the plaintiffs identified and deducted from their application a total of 12.8 hours for work on the claims that were rejected by both this Court and the Second Circuit, specifically, the claims brought pursuant to the Privileges and Immunities Clause of the Constitution, the Equal Protection Clause of the Constitution, the Fair Housing Act, 42 U.S.C. §§ 1981 and 1982, and 42 U.S.C. § 1983.

With respect to the fact that the Second Circuit invalidated only one of the challenged regulations, 19 N.Y.C.R.R. § 178, it is the Court's view that the dispute over the nonsolicitation regulation was the essence of this lawsuit. The Second Circuit expressly stated that its decision as to the validity of the nonsolicitation regulation was "dispositive of the dispute underlying this appeal." *New York Association of Realtors,* 27 F.3d at 838. Therefore, the Court finds that a fifty per cent reduction based on lack of success is not appropriate.

Furthermore, it is reasonable to expect that the plaintiffs' claims that were related to N.Y.Real Prop.Law § 442–h and the two regulations promulgated under it were based upon a common set of facts and similar legal theories. It would be impractical to divide the hours on a claim-by-claim basis for such

related claims, as a large portion of the attorneys' time is likely to have been spent on the First Amendment claims as a whole, rather than on the individual claims. In circumstances such as these, a district court "should focus on the significance of the overall relief obtained by the plaintiff." *United States Football League*, 887 F.2d at 414. Although the plaintiffs here did not attain a favorable outcome on every aspect of their First Amendment claim, the relief they obtained was indeed significant. In addition, the fact that injunctive relief was not obtained is not a major factor in measuring the plaintiffs' success in this action.

## B. The Lodestar Figure

█ The plaintiffs' counsel sets forth the following figures in support of their claim for legal fees incurred in prosecuting the case to its favorable conclusion:

| | | | |
|---|---|---|---|
| Michael T. Wallender | 318.1 hours @ | $200/hour | = $63,620.00 |
| Barbara Billet | 81.0 hours @ | $165/hour | = $13,365.00 |
| Donna Herlihy | 10.5 hours @ | $ 50/hour | = $  525.00 |
| **Total** | **409.6 hours** | | **$77,510.00** |

Michael T. Wallender, Esq. is a partner in the law firm; Barbara G. Billet, Esq. serves as of counsel to the firm; and Deborah Herlihy is a paralegal.

The amount of an award of attorney's fees in a civil case is determined by the "lodestar" method. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir.1994). That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). A reasonable attorneys fee is,

> one calculated on the basis of rates and practices prevailing in the market, *i.e.*, "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and one that grants the successful civil rights plaintiff a "fully compensatory fee," comparable to what "is traditional with attorneys compensated by a fee-paying client."

*Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (citation omitted). *See also Blum v. Stenson*, 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984).

The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorney's fees in a civil rights case, the district court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

However, many of these factors are subsumed within the initial lodestar calculation. Thus, in *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–50, the Supreme Court held that the novelty and complexity of the issues, the

quality of representation, the special skill and experience of counsel, and the results obtained are factors fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award. *See also, Delaware Valley Citizens' Council,* 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *United States Football League,* 887 F.2d at 415.

■ In determining the specific amount of an attorney's fee, the prevailing parties "are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cruz,* 34 F.3d at 1159; *New York State Nat'l Org. for Women v. Terry,* 737 F.Supp. 1350, 1361 (S.D.N.Y.1990) (citation omitted), *aff'd in part, rev'd in part on other grounds,* 961 F.2d 390 (2d Cir.1992). In determining the lodestar figure, the "community" to which the district court should look is the district in which the court sits. *Cruz,* 34 F.3d at 1159.

The Court has reviewed the applicable law in this Circuit and determines that, based upon the type of work performed and the experience of the attorneys, the following maximum rates are fair and reasonable: for partners, $200 per hour; for associates, $135 per hour, although that rate may vary based on the experience and expertise of the individual. These rates have been upheld in the Second Circuit as within the scope of the Court's discretion to impose. *See Cruz,* 34 F.3d at 1160. *See also Huntington Branch NAACP v. Town of Huntington,* 749 F.Supp. 62, 65 (E.D.N.Y.1990) (rates of $135–$225 per

hour appropriate in housing discrimination case, where counsel performed "extremely ably" and have experience in civil rights cases); *Nu–Life Constr. Corp. v. Board of Educ.,* 795 F.Supp. 602, 606 (E.D.N.Y.1992) (counsel awarded fees at rates of $165–$200 per hour in RICO action after an eleven week jury trial), *aff'd in relevant part,* 28 F.3d 1335, 1342 (2d Cir.1994).

■ Additionally, the time of a paralegal is also compensable in an award of attorney's fees. *Missouri v. Jenkins,* 491 U.S. at 285–86, 109 S.Ct. at 2471; *United States Football League,* 887 F.2d at 416. The Court compensates plaintiffs' counsel for the work performed by their paralegal at a rate of $50 per hour. *See Aetna Casualty and Surety Co. v. Namrod Devel. Corp.,* No. 91–1609, 1992 WL 367100, 1992 U.S.Dist. LEXIS 17843 (S.D.N.Y. November 24, 1992) (paralegal work compensated at $55 per hour); *Lewis v. Tuscan Dairy Farms, Inc.,* No. 87–7607, 1992 WL 226927, 1992 U.S.Dist. LEXIS 13244 (S.D.N.Y. Sept. 3, 1992) (paralegal work compensated at $50 per hour).

Accordingly, the billing time of the partner, Mr. Wallender will be compensated at a rate of $200.00. The time Ms. Billet, who serves the law firm in an of counsel capacity, will be compensated at a rate of $165.00, based on her fifteen years of experience and her expertise in the area of First Amendment law. In addition, the Court approves the requested $50.00/hour rate for the paralegal services of Ms. Herlihy. Therefore, the legal fees requested by the plaintiffs' counsel are approved by the Court as follows:

| | | | |
|---|---|---|---|
| Michael Wallender | 318.1 hours @ $200/hour | = | $63,620.00 |
| Barbara Billet | 81.0 hours @ $165/hour | = | $13,365.00 |
| Deborah Herlihy | 10.5 hours @ $50/hour | = | $ 525.00 |
| **Total** | **409.6 hours** | | **$77,510.00** |

## C. Time Records

■ Central to an application for attorney's fees is the submission of time records reflecting the hours expended by counsel in pursuing the successful claims of their client. In order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work.

*Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). It is not necessary for the applicant to submit the actual diary entries made by the attorneys at the time they perform the work. Rather, reconstruction of such contemporaneous records on a computer and billing based on these records is adequate. *Cruz,* 34 F.3d at 1160. What is important is

that "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). "The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987) (applying New York State law and noting that the Second Circuit rule is similar to that of New York); *see also Soler v. G & U Inc.,* 801 F.Supp. 1056 (S.D.N.Y.1992).

The plaintiffs' counsel has submitted computerized billing records of contemporaneously maintained daily time sheets, which describe each task, identifies the attorney and indicates the time spent in tenths of hours. The Court finds that these records adequately document the work that was performed.

**D. Disbursements**

■ With regard to costs and disbursements, a court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir.1987). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." *Terry,* 737 F.Supp. at 1363.

The Court has reviewed the affidavit and accompanying cost records submitted by the plaintiff's counsel, which seeks $3,686.27 in costs and disbursements. This figure represents costs incurred by the plaintiffs' counsel for the following expenses in connection with litigating this action: telephone, photocopying, postage and Federal Express delivery, deposition transcript fees, Westlaw research and transportation. The Court approves this application, as none of the items listed appear to be part of the attorneys' ordinary overhead, each of the categories is reimbursable and the total figure is not excessive.

**E. Interest**

The Court does not award interest on this award for any period prior to the entry of the judgment for fees, as is set forth in this decision. Once the judgment for fees and costs is entered, there will be post judgment interest.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that judgment is granted in favor of the plaintiffs against the defendant for attorneys fees and expenses incurred by the Law Offices of Michael T. Wallender in the amount of $81,196.27; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter judgment in favor of the plaintiffs against the defendant for attorney fees and expenses in the amount of $81,-196.27.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**